**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William O. BROWN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2013.

Filed March 21, 2013.

Reargument Denied May 22, 2013.

Harry J. Cancelmi, Jr., Public Defender, Waynesburg, for appellant.

John P. Friedman, Assistant District Attorney, Waynesburg, for Commonwealth, appellee.

BEFORE: PANELLA, J., ALLEN, J., and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:

William O. Brown (Appellant) appeals from his aggregate judgment of·sentence of 30 days to 23.5 months of incarceration following his convictions for possession of a controlled substance and possession of drug paraphernalia.[1] Appellant challenges the denial of his motion to suppress the contraband recovered in the vehicle search following a traffic stop. We affirm.

The relevant facts of the case are as follows. On the night of September 17, 2010, Corporal Dowlin of the Pennsylvania State Police observed a Ford pickup truck, driven by Appellant, make a left turn from Richhill Street onto Greene Street without using a turn signal. Corporal Dowlin signaled for the vehicle to stop. As he approached the vehicle, he saw the passenger look over her shoulder at Corporal Dowlin, look down to her right, then extend her

* Retired Senior Judge assigned to the Superior Court.

1. 35 P.S. §§ 780–113(a)(16) and 780–113(a)(32), respectively.

right arm and dip her right shoulder. Based upon his training on the characteristics of armed individuals, Corporal Dowlin believed that the passenger may have been attempting to conceal a firearm. He therefore drew his weapon and ordered Appellant and the passenger to keep their hands on their knees until backup, in the form of Corporal Dowlin's brother, Trooper Dowlin, arrived. Upon opening the passenger door, Trooper Dowlin found what he believed to be marijuana on the seat next to the passenger. Trooper Dowlin then lifted two jackets that were on the seat in the area where the passenger had been reaching and discovered a shopping bag containing more bags of marijuana. Upon Appellant's consent, the officers searched the remainder of the vehicle, which was registered to Michael Hershberger. In addition to the several bags of marijuana, the officers found a digital scale and wrapping papers. Ultimately, no weapons were found and Appellant admitted that the drugs and paraphernalia were his.

Appellant was charged with possession of a controlled substance, possession of drug paraphernalia, and possession with intent to deliver (PWID).[2] Appellant's pre-trial motion to suppress the evidence obtained after the traffic stop was denied. A jury rendered a verdict of not guilty on the PWID charge, but guilty as to the possession counts. On March 19, 2012, Appellant was sentenced as indicated above. Appellant filed a timely notice of appeal, and both Appellant and the suppression court complied with Pa.R.A.P. 1925.

Appellant states two questions for our review.

[1.] Did the suppression court err in finding that the police had reasonable suspicion of any motor vehicle ... code violation or have any probable cause to conduct a stop of a pickup truck slowly turning left on Route 21 followed by a police cruiser about one car length behind?

[2.] During a traffic stop when a passenger seated next to the driver on the bench seat of a pickup truck rotates her head to the left to look over her right shoulder in the direction of the officer, and then looks down to the right[,] with a slight dip of the right shoulder, is there a sufficient bases to approach with gun ready, order the occupants to show their hands, call for backup, and command a search of the passenger compartment?

Appellant's Brief at 10 (suppression court answers omitted).

 With both of his arguments, Appellant claims that the suppression court erred in denying his pre-trial motion to suppress the evidence obtained by Corporal and Trooper Dowlin. We consider these arguments mindful of the following standard of review.

[I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

---

**2.** 35 P.S. § 780–113(a)(3).

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super.2010) (citation omitted).

■ First, Appellant argues that Corporal Dowlin had neither reasonable suspicion nor probable cause to stop the truck in the first place. Before we address the merits of his claim, we must determine what quantum of suspicion was required to validate the traffic stop.

■ A police officer has the authority to stop a vehicle when he or she has **reasonable suspicion** that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have **probable cause** to initiate the stop. *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super.2010).

> Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

*Commonwealth v. Chase*, 599 Pa. 80, 960 A.2d 108, 115 (2008).

Corporal Dowlin testified that he stopped Appellant for failing to signal when he turned left from Richhill Street to Greene Street. As further investigation would not help to establish whether Appellant turned without using the required signal, Corporal Dowlin was required to have probable cause to initiate the stop.[3]

The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis.

*Commonwealth v. Hernandez*, 594 Pa. 319, 935 A.2d 1275, 1284 (2007) (quotation and citations omitted).

The statute governing use of signals provides in pertinent part as follows.

§ **3334. Turning movements and required signals**

**(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

**(b) Signals on turning and starting.**— At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334. The vehicle code further mandates, with exceptions not argued by Appellant to be relevant here, that "[a]ny motor vehicle in use on a highway shall be equipped with, and required signal

---

**3.** The suppression court erroneously applied the reasonable suspicion standard rather than determine whether there was probable cause. However, "if the record supports the result reached by the suppression court, we may affirm on any ground." *Commonwealth v. Cartagena*, 63 A.3d 294, 301 (Pa.Super.2013) (*en banc*).

shall be given by, signal lamps...." 75 Pa.C.S. § 3335(b).

Corporal Dowlin testified that Appellant turned his vehicle from one street to another without using his signal lamps.[4] Seeing this himself, Corporal Dowlin unquestionably possessed facts to warrant belief by any reasonable person that Appellant violated the vehicle code.

■ Appellant argues that the lane from which he turned was designated for left turns only, giving Appellant no option other than to turn left. Appellant claims that he gave the proper signal because "[b]eing in the lane is already a signal of the intention to turn." Appellant's Brief at 19.

This is an issue of first impression in Pennsylvania.

The statute requires use of a signal lamp or a hand signal when making a turn, and provides no exception for turns made from a lane designated for turns only. Appellant did not signal. Therefore, Corporal Dowlin was justified in initiating the traffic stop,[5] and Appellant's first issue entitles him to no relief. *Accord State v. Smith,* 163 N.H. 427, 42 A.3d 845 (2012) (declining to find exception for turn made from left-turn-only lane where none existed in statute); *People v. Moran,* 2012 WL 6969757 (Ill.App. 2 Dist. September 6, 2012) (reversing grant of suppression motion because signal was required even when turning from right-turn-only lane); *Wehring v. State,* 276 S.W.3d 666, 670 (Tex.App.–Texarkana 2008) ("The plain language of the statute requires the driver to signal for a turn. It does not include exceptions for those situations in which there is only one direction to turn."); *State v. Smith,* 156 Ohio App.3d 238, 805 N.E.2d 171 (2004) (holding police had probable cause to stop the appellant because use of a signal was required when turning from a left-turn-only lane). *But see State v. Padilla,* 119 Or.App. 27, 850 P.2d 372 (1993) (holding signal not required when making a right turn from a right-turn-only lane).

■ Appellant's second argument is that the evidence should have been suppressed because the search of the truck following the stop was unconstitutional. *See* Appellant's Brief at 25–33. Specifically, Appellant argues that the movements of the passenger witnessed by Corporal Dowlin did not provide him with sufficient cause to fear for his safety to justify a weapons search. We need not decide this issue because Appellant failed to prove as a threshold matter that he had a reasonable expectation of privacy in the truck.[6]

---

**4.** The passenger testified that Appellant did activate his signal. However, she was unable to see whether the lamps actually flashed outside the vehicle. "[T]he suppression inquiry is analyzed from the perspective of the officer and not from the perspective of the defendant." *Commonwealth v. Vincett,* 806 A.2d 31, 33 (Pa.Super.2002). Therefore, only what was observable by the officer is relevant. In any event, the passenger's testimony was contradicted by that of Corporal Dowlin, and is therefore not properly considered by this court. *See Cauley,* 10 A.3d at 325 ("Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evi-

dence for the defense as remains uncontradicted when read in the context of the record as a whole.").

**5.** Corporal Dowlin also testified that, after turning onto Greene Street, Appellant nearly came to a complete stop in the right travel lane. Because we have determined that Appellant's violation of 75 Pa.C.S. § 3334(a) was sufficient basis for the traffic stop, we need not consider this additional alleged violation.

**6.** Again, "if the record supports the result reached by the suppression court, we may affirm on any ground." *Cartagena, supra,* at 301.

The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. [U]nder Pennsylvania law, a defendant charged with a possessory offense has standing to challenge a search.

To prevail in a challenge to the search and seizure, however, a defendant accused of a possessory crime must also establish, as a threshold matter, a legally cognizable expectation of privacy in the area searched. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all of the surrounding circumstances.

*Commonwealth v. Caban,* 60 A.3d 120, 126 (Pa.Super.2012) (citations and quotations omitted).

A panel of this Court faced the same issue in *Commonwealth v. Maldonado,* 14 A.3d 907 (Pa.Super.2011). In that case, Maldonado was pulled over while driving a car owned by his paramour Vasquez. *Id.* at 911. From a subsequent search of the vehicle, police recovered drugs and guns and charged Maldonado with crimes related to his possession of each. *Id.* at 909. At the suppression hearing, which Vasquez attended without testifying, the Commonwealth presented evidence that the vehicle was owned by Vasquez and that Maldona-

do lived with her at the address at which the vehicle was registered. *Id.* at 911. However, Maldonado offered no evidence that he had permission to drive the car on the day in question. This Court concluded that the suppression court erred in granting Maldonado's suppression motion, stating as follows.

The fact that Maldonado and Vasquez might have lived together and had a romantic relationship does not foreclose the possibility that Maldonado was driving Vasquez's vehicle without her knowledge or permission. For that reason, we conclude that Maldonado failed to establish an expectation of privacy in the vehicle he was driving, which "he did not own, that was not registered to him, and for which he has not shown authority to operate."

*Id.* (quoting *Commonwealth v. Burton,* 973 A.2d 428, 436 (Pa.Super.2009) (en banc)).

Here, the vehicle that was subject to the search was owned by Michael Hershberger, not by Appellant. *See* N.T., 7/11/2011, at 18. At the suppression hearing, Appellant offered no evidence of any relationship to Mr. Hershberger, let alone of any authority to operate Mr. Hershberger's truck on the night in question. If anything, Appellant offered less evidence of an objectively reasonable expectation of privacy in Mr. Hershberger's truck than Maldonado did in Vasquez's car. Accordingly, we conclude that Appellant failed to establish a legally cognizable expectation of privacy in the vehicle necessary for him to prevail on his challenge the constitutionality of its search.[7] Appellant's suppression motion was, therefore, properly denied.

---

7. Speaking for myself only and not as the conduit of this Court's decision, *see Commonwealth v. King,* —— Pa. ——, 57 A.3d 607, 633 n. 1 (2012) (Saylor, J., concurring) (discussing the precedent for a special concurrence by the author of the majority opinion), I disagree

with the rule that it is a defendant's burden to prove that he or she had permission to drive a vehicle owned by someone else. Given that in the vast majority of cases a driver is acting with the permission of the owner, I believe that the law should presume that the driver

 Furthermore, even if. Appellant did satisfy the threshold requirement to challenge the search of the truck, he would not be entitled to relief from this Court.

> Our past cases indicate [ ... ] that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. If a suspect is dangerous, he is no less dangerous simply because he is not arrested.

*Cartagena, supra,* at 298–99 (quoting *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)) (internal quotations and citations omitted). Pertaining to a limited weapons search, an individual's rights under the Pennsylvania constitution are coextensive with those of the federal constitution. *See Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721, 724 n. 3 (1994).

___

had permission to drive a borrowed vehicle, and thus had an expectation of privacy there-

 In the instant case, the suppression court discussed its determination that the search of the truck was valid as follows.

> Corporal Dowlin has the benefit of not only his experience, but also training, including an ATF seminar on "Characteristics of an Armed Gunman." After initiating the traffic stop, Corporal Dowlin approached the back of the vehicle and observed the passenger's movements (described above) which he, based upon his training and experience, recognized as possibly reaching for and retrieving a firearm. Although there was no firearm found, Corporal Dowlin recognized that she was reaching to the seat and not the glove box as is usual during routine traffic stops.... This provides probable cause for a search, and it was during this Constitutional "wingspan" search for a weapon that Trooper Dowlin found marijuana by merely opening the door.
>
> By finding the marijuana before a full search of the truck, and the credible testimony of Corporal Dowlin to the consent to search, the arrest and discovery of the marijuana and paraphernalia [were] Constitutional.

Suppression Court Opinion, 9/20/2011, at 7–8

The suppression court erroneously applied a probable cause standard rather than that of reasonable suspicion, but the result is the same. Corporal Dowlin had received training in the identification of armed suspects. He observed the passenger look to confirm that a single police officer was approaching them, and then reach to the seat right beside her rather than to an area where a vehicle's documentation is typically located. At nighttime, and with the limited view provided by the

___

in, and place the burden on the Commonwealth to prove otherwise.

window of the truck, Corporal Dowlin was unable to see the hands of the occupants. These specific facts and the reasonable inferences therefrom, viewed in the totality of the circumstances, support the determination that a reasonably prudent person would be warranted in believing that Appellant's passenger may have had immediate access to a weapon. Further, the search that produced the marijuana was limited to the area to which the passenger had reached. *See, e.g., Commonwealth v. Tuggles*, 58 A.3d 840, 844 (Pa.Super.2012) ("Where a person performs an activity that is indicative of an attempt to secrete a weapon, that movement, regardless of whether it is singular or multiple, can support a belief that the person has a gun."); *Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa.Super.2007) (holding limited weapons search was justified following traffic stop at night of vehicle into which officer could not see, where occupant had engaged in furtive movements). *Cf. Cartagena, supra*, at 302–04 (holding articulated facts insufficient to support weapons search where the only reason for search was the defendant's nervousness, and the officer did not testify to his level of training and experience or that the defendant made any movements to indicate possession of a weapon).

The facts available to Corporal Dowlin did not establish overwhelming proof that he was in danger, but they were enough under the circumstances to support reasonable suspicion. As this Court has noted repeatedly,

> [t]he heightened risk of danger to police officers during roadside encounters should be contrasted with the lessened expectation of privacy that a citizen possesses with respect to his vehicle:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

*Commonwealth v. Boyd*, 17 A.3d 1274, 1278 (Pa.Super.2011) (quoting *In re O.J.*, 958 A.2d 561 (Pa.Super.2008), appeal denied, 605 Pa. 688, 989 A.2d 918 (2010)) (internal quotation omitted).

Accordingly, we conclude that the search of the truck did not violate Appellant's constitutional rights.

Judgment of sentence affirmed.