J-A18002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MELANIE EILEEN CRAVENER, | |
| Appellee | No. 1714 MDA 2015 |

Appeal from the Order Entered September 3, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000922-2015

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ELIZABETH RIVERA, | |
| Appellee | No. 1715 MDA 2015 |

Appeal from the Order Entered September 3, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000965-2015

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED NOVEMBER 01, 2016**

Appellant, the Commonwealth of Pennsylvania, appeals from the

orders entered in two separate cases involving Melanie Eileen Cravener and

_____

[*] Former Justice specially assigned to the Superior Court.

Elizabeth Rivera (herein, Appellees).[1]  Those orders granted Appellees'

pretrial motions to suppress evidence and dismiss charges in connection with

heroin and drug paraphernalia allegedly discovered in Ms. Cravener's vehicle

after it was stopped due to its having a missing/broken passenger-side

mirror.  After careful review, we vacate the trial court's orders and remand

for further proceedings.

The trial court provided the following factual and procedural history of

this case:

> On April 3, 2015, Patrolman Scott Boyd (herein Ptlm. Boyd) of the North Londonderry Township Police initiated a traffic stop of a vehicle at approximately 1:00 p.m.  Ptlm. Boyd testified that he could see that the mirror on the passenger side of the vehicle was missing from the housing.  He saw that the driver's side mirror was in place after he initiated the traffic stop. Ptlm. Boyd believed this to be a violation of the vehicle code. Melanie Eileen Cravener … was driving the vehicle.  Elizabeth Rivera … was riding in the front passenger seat of the vehicle. During the stop, Ptlm. Boyd asked for consent to search the vehicle, which was granted.  As a result of this search and a later search with a warrant, heroin and drug paraphernalia are alleged to have been found in the vehicle.

> ***

> [Appellees] were charged as a result of the vehicle searches.  [Ms.] Cravener and [Ms.] Rivera were charged with the following:

> Count 1: Violation of the Controlled Substance, Drug, Device, and Cosmetic Act (F) under 35 P.S. § 780-113(a)(30);

_____

[1] The Commonwealth filed a motion to consolidate the appeals in the two underlying cases.  On November 17, 2015, our Court issued a *per curiam* order granting that motion.

Count 2: Criminal Conspiracy to commit a Violation of the Controlled Substance, Drug, Device, and Cosmetic Act (F) under 18 Pa.C.S.[] § 903(a)/[] 35 P.S. § 780-113(a)(30);

Count 3: Violation of the Controlled Substance, Drug, Device, and Cosmetic Act (M) under 35 P.S. § 780-113(a)(16); and

Count 4: Violation of the Controlled Substance, Drug, Device, and Cosmetic Act (M) under 35 P.S. § 780-113(a)(32).[2]

A Preliminary Hearing was held on May 21, 2015, after which all of the charges for [Appellees] were bound over. [Ms.] Rivera filed a Pretrial Motion to Suppress Evidence and Dismiss the Charges on July 7, 2015. [Ms.] Cravener filed a Pretrial Motion to Suppress Evidence and Dismiss the Charges on July 17, 2015. A Pretrial Hearing was held on [Appellees'] motions on July 29, 2015. The Court requested that the parties provide briefs in support of their respective positions by August 21, 2015.

Trial Court Opinion (TCO), 10/23/15, at 4-5 (footnote omitted). Ultimately, the trial court determined that the Motor Vehicle Code requires that vehicles be equipped with only one mirror and, thus, Patrolman Boyd "lacked the requisite reasonable suspicion required … to initiate this particular traffic stop." *Id.* at 8. As such, the trial court found that "the initial stop of the vehicle was an illegal seizure of the vehicle. Therefore, any and all evidence seized from the vehicle must be suppressed as a result of the initial illegal seizure." *Id.* As a result, it granted Appellees' motions to suppress the evidence and dismiss the charges. The Commonwealth filed timely notices

_____

[2] Ms. Cravener was also charged with violations of the Motor Vehicle Code under 75 Pa.C.S. § 1501(a) (drivers required to be licensed) and 75 Pa.C.S. § 4107(b)(2) (unlawful activities).

of appeal certifying pursuant to Pa.R.A.P. 311(d) that the trial court's suppression orders substantially handicaps its prosecution of these cases.

In this appeal, the Commonwealth presents a single issue for our review:

> A. Whether the trial court erred in granting [Appellees'] motions to suppress evidence after finding the traffic stop of [Ms.] Cravener's vehicle was unlawful?

Commonwealth's Brief at 4 (unnecessary capitalization omitted).

Initially, we set forth our standard of review:

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) (internal citations omitted). Further, "[t]he issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." *Commonwealth v. Shabazz*, 18 A.3d 1217, 1219-20 (Pa. Super. 2011) (internal citation omitted).

The Commonwealth argues that the trial court erred in granting Appellees' pretrial motions to suppress the evidence and dismiss the charges

because "[Patrolman] Boyd viewed [Appellees'] vehicle with a broken mirror prior to the traffic stop which he knew was a violation of the inspection regulations promulgated by the Department of Transportation. [Patrolman] Boyd had reasonable suspicions based on his observations to conduct a traffic stop." Commonwealth's Brief at 8. We agree.

This Court has stated that the Motor Vehicle Code "permits a police officer to initiate a traffic stop when he or she possesses reasonable suspicion that a section of the Code has been or is being violated." *Shabazz*, 18 A.3d at 1220. The Motor Vehicle Code sets forth, in pertinent part, the following:

> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). Further, we have explained:

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a

- 5 -

man of reasonable caution in the belief that the action taken was appropriate.

**Commonwealth v. Anthony**, 1 A.3d 914, 919-20 (Pa. Super. 2010) (internal citations and quotation marks omitted).[3]

Significantly, the United States Supreme Court has held that "a mistake of law can … give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment." **Heien v. North Carolina**, 135 S.Ct. 530, 534 (2014). In **Heien**, a police officer stopped a vehicle because one of its two brake lights was not working, which the officer believed was a violation of North Carolina law. **Id.** at 534-35. Subsequent to the stop, cocaine was found in the vehicle and the driver was charged with attempted trafficking in cocaine. **Id.** at 535. When the driver moved to suppress evidence seized from the car, the trial court denied the motion, concluding that the officer had reasonable suspicion to initiate the stop. **Id.** The North Carolina Court of Appeals reversed, explaining that

---

[3] We note that "[a] police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop." **Commonwealth v. Brown**, 64 A.3d 1101, 1105 (Pa. Super. 2013) (internal citations and emphasis omitted). "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." **Id.** We need not decide which standard applies here, as the Commonwealth only raises the issue of whether a missing/broken mirror violates the Motor Vehicle Code to justify a traffic stop.

"[t]he initial stop was not valid … because driving with only one working brake light was not actually a violation of North Carolina law." *Id.* The North Carolina Supreme Court then reversed, determining that because the officer's "mistaken understanding of the vehicle code was reasonable, the stop was valid."[4] *Id.*

The United States Supreme Court affirmed, concluding that it was "objectively reasonable for an officer … to think that [the] faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop." *Id.* at 540. Specifically, it explained, "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes – whether of fact or of law – must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Id.* at 539.

Here, we similarly conclude that it was objectively reasonable for Patrolman Boyd to believe that the missing/broken rearview mirror violated the Motor Vehicle Code. The Motor Vehicle Code sets forth that "[n]o person shall operate a motor vehicle or combination on a highway unless the vehicle or combination is equipped with at least one mirror, or similar device, which provides the driver an unobstructed view of the highway to the rear of the

_____

[4] We note that "the North Carolina Supreme Court assumed for purposes of its decision that the faulty brake light was not a violation [of the law,]" taking note that "the State had chosen not to seek review of the [c]ourt of [a]ppeals' interpretation of the vehicle code." *Heien*, 135 S.Ct. at 535.

vehicle or combination." 75 Pa.C.S. § 4534. The Commonwealth concedes that Ms. Cravener's vehicle complied with Section 4534. ***See*** Commonwealth's Brief at 17. However, the Commonwealth asserts that the vehicle "was not in compliance with the Department [of Transportation's] regulations requiring equipped mirrors be present and function as set forth in … [67 Pa. Code §] 175.68 and [67 Pa. Code §] 175.80(a)(5)," which, in turn, violated the Motor Vehicle Code under 75 Pa.C.S. § 4107(b)(2). ***See*** Commonwealth's Brief at 13, 17. Section 4107(b)(2) provides:

> **(b) Other violations.--**It is unlawful for any person to do any of the following: []
>
> (2) Operate, or cause or permit another person to operate, on any highway in this Commonwealth any vehicle or combination which is not equipped as required under this part or under department regulations or when the driver is in violation of department regulations or the vehicle or combination is otherwise in an unsafe condition or ***in violation of department regulations.***

75 Pa.C.S. § 4107(b)(2) (emphasis added).

The Department of Transportation's regulations cited by the Commonwealth set forth the following requirements. First, 67 Pa. Code § 175.68(a), (b) states:

> *(a) Condition of mirrors.* ***Mirrors shall be in safe operating condition as described in § 175.80 (relating to inspection procedure).***
>
> *(b) Rearview mirrors.* A vehicle specified under this subchapter shall be equipped with at least one rearview mirror or similar device which provides the driver an unobstructed view of the highway to the rear of the vehicle for a distance of not less than 200 feet. A mirror may not be cracked, broken or discolored.

67 Pa. Code § 175.68(a), (b) (emphasis added). Second, 67 Pa. Code § 175.80(a)(5) provides:

> *(a) External inspection*. An external inspection shall be performed as follows:
>
> ***
>
> (5) Check outside mirrors and reject if one or more of the following apply:
>
> > **(i) The mirror is cracked, broken or discolored.**
> >
> > (ii) The mirror will not hold adjustment.
> >
> > (iii) A vehicle does not have rearview mirrors as originally equipped by the manufacturer.
> >
> > (iv) Outside rearview mirrors, with a minimum reflective surface as described in § 175.68 (relating to mirrors), are not installed on both sides of the vehicle if a certificate of exemption for a sun screening device or other material has been issued by the Department. See § 175.264 (relating to mirrors). A vehicle for which a certificate of exemption has been issued for medical reasons may be equipped with only a left outside rearview mirror, unless originally equipped with an outside rearview mirror on both sides of the vehicle.
> >
> > **(v) The mirrors, if originally so equipped, are missing.**

67 Pa. Code § 175.80(a)(5) (emphasis added).

Given the language of the statutes and regulations cited *supra,* it is unclear whether a vehicle must have one or two outside mirrors. Although the Motor Vehicle Code states that vehicles "must be equipped with at least one mirror," **see** 75 Pa.C.S. § 4534, it also states that it is unlawful for any person to operate a vehicle in violation of the Department of Transportation's regulations. 75 Pa.C.S. § 4107(b)(2). Those regulations,

cited above, set forth that mirrors should be in "safe operating condition" as described in 67 Pa. Code § 175.80, which means that mirrors should not be broken or missing. *See* 67 Pa. Code §§ 175.68(a), (b); 175.80(a)(5). Thus, it is objectively reasonable to believe that having only one outside mirror is a violation of the Motor Vehicle Code.[5]

Indeed, at the suppression hearing, Patrolman Boyd testified that he believed the missing/broken outside mirror constituted a violation of the Motor Vehicle Code:

> [The Commonwealth:] Officer Boyd, what about the van and its equipment was exactly in violation?
>
> [Patrolman Boyd:] It was the passenger-side mirror because it was broken and missing.
>
> [The Commonwealth:] How is that a violation?
>
> [Patrolman Boyd:] Because it's – it's required – if it has original equipment, that original equipment must be operational. In this case that mirror was not operational.
>
> [The Commonwealth:] Were you able to tell that the vehicle was originally equipped with that mirror?
>
> [Patrolman Boyd:] Yes. It was a factory mirror.

---

[5] We acknowledge that this Court has stated that "[t]he failure to equip a car with a side-view mirror does not constitute a Motor Vehicle Code violation." *Commonwealth v. Steinmetz*, 656 A.2d 527, 528 (Pa. Super. 1995). In that case, we interpreted 75 Pa.C.S. § 4534 to mean that vehicles need not have side-view mirrors, as long as they are equipped with a rearview mirror. However, in *Steinmetz*, the driver did not raise issue with the seemingly conflicting requirements under the Department of Transportation's regulations. *Cf. Commonwealth v. Williams*, 125 A.3d 425 (Pa. Super. 2015) (considering inspection procedures under the Department of Transportation's regulations to determine that police officer had reasonable suspicion that a violation of the Motor Vehicle Code was occurring).

[The Commonwealth:] Were you to see that before the traffic stop?

[Patrolman Boyd:] Correct.

[The Commonwealth:] Did the vehicle pass by you before the traffic stop?

[Patrolman Boyd:] Yes.

[The Commonwealth:] So you were able to get a look at the side of that car?

[Patrolman Boyd:] Yes. The passenger side of the roadway as the vehicle passed me going the same direction as I was.

[The Commonwealth:] So if I understand correctly, your traffic stop was based upon that mirror being broken or missing?

[Patrolman Boyd:] Correct.

[The Commonwealth:] Your understanding is that was a violation of the Vehicle Code?

[Patrolman Boyd:] Yes.

N.T. Pretrial Hearing, 7/29/15, at 6-7.

Thus, the record demonstrates that Patrolman Boyd believed the missing/broken outside mirror violated the Motor Vehicle Code and, in light of the unclear language of the applicable statutes and regulations, we conclude that this was a reasonable assumption. Because it was objectively reasonable, the initial traffic stop by Patrolman Boyd was lawful. Accordingly, the evidence seized should not be suppressed on the basis that the initial seizure was illegal, and we must vacate the court's orders, granting Appellees' motions to suppress and dismiss the charges.

Orders vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2016