J. S06038/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
EDWARD MARX, : No. 2693 EDA 2019
:
Appellant :


Appeal from the Judgment of Sentence Entered August 1, 2019,
in the Court of Common Pleas of Carbon County
Criminal Division at No. CP-13-CR-0001641-2017


BEFORE: LAZARUS, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: Filed: April 9, 2020

Edward Marx appeals from the August 1, 2019 judgment of sentence of 72 hours' to 6 months' imprisonment imposed after he was found guilty in a bench trial of driving under influence of alcohol or controlled substance ("DUI") – Schedule I controlled substance.[1] After careful review, we affirm the judgment of sentence.

The trial court[2] summarized the relevant facts and procedural history of this case as follows:

> On September 29, 2017, at approximately 11:15 p.m., Lehighton Borough Police Officer Bruce Broyles was on routine patrol duty in a marked police vehicle and in full uniform near Bridge Street in

---

[1] 75 Pa.C.S.A. § 3802(d)(1)(i).

[2] For the ease of our discussion, we collectively refer to the suppression court and the trial court as "trial court."

Lehighton Borough, Carbon County, Pennsylvania. At that time, Officer Broyles observed a silver Volkswagen sedan exit the Dunkin Donuts parking lot onto the Weissport [B]ridge with an inoperable passenger-side license plate lamp. The vehicle in question is equipped with two (2) license plate lamps. Officer Broyles did not observe any traffic violation other than the inoperable license plate lamp.

After the vehicle crossed the bridge, Officer Broyles initiated a traffic stop near the municipal park in Weissport Borough. Officer Broyles testified that because the subject vehicle had only one (1) operable license plate lamp, he was unable to confirm the plate until after the vehicle was stopped. Officer Broyles approached the vehicle and identified the driver as [appellant] by his driver's license. While speaking with [appellant], Officer Broyles detected the odor of marijuana emanating from inside [appellant's] vehicle and observed that [appellant] had glassed over, bloodshot eyes. Officer Broyles also observed that the vehicle's certificate of inspection was expired.

Officer Broyles asked [appellant] to exit the vehicle to perform field sobriety tests. While Officer Broyles was talking with [appellant] outside of the vehicle, [appellant] admitted that he had smoked marijuana within the past two (2) hours. Officer Broyles had [appellant] perform the HGN[3] test, the walk-and-turn test, and the one-leg–stand test. Officer Broyles observed one (1) clue of impairment during the walk-and-turn test and one (1) clue of impairment during the one-leg-stand test. Officer Broyles also had [appellant] perform the lack of convergence test and the modified Romberg balance test. [Appellant] displayed a lack of convergence. During the balance test, [appellant] inaccurately estimated the passage of thirty (30) seconds in a period of twenty-three (23) seconds, which is outside the acceptable range.

Once [appellant] had completed the tests, he consented to a search of his vehicle by Officer Broyles.

---

[3] Horizontal Gaze Nystagmus.

> Officer Broyles instructed [appellant] to turn the vehicle's lights on to confirm that the passenger-side license plate lamp was inoperable. Once the lights were activated, Officer Broyles confirmed that the license plate lamp was inoperable. Officer Broyles then placed [appellant] under arrest for DUI and secured him in the patrol vehicle. [Appellant] consented to a blood draw and Officer Broyles transported [appellant] to Gnaden Huetten Memorial Hospital. [Appellant's] blood was drawn by a phlebotomist at Gnaden Huetten Memorial Hospital and sent for testing at NMS laboratory.
>
> On February 16, 2018, [appellant] filed an ***omnibus*** pre-trial motion including motions to compel discovery, to suppress evidence based on an illegal stop, to suppress evidence based upon coerced consent to a search and seizure, and for a writ of ***habeas corpus***. On March 16, 2018, th[e trial] court approved a stipulation between the parties in which [appellant] withdrew each of the aforesaid claims, except the motion to suppress evidence based on an illegal stop. Pursuant to the stipulation, the parties agreed to submit, in lieu of testimony on the suppression motion, the transcript from the preliminary hearing held on December 20, 2017, and the footage of the incident from the mobile video recorder [("MVR")] mounted in Officer Broyles' patrol vehicle. On July 24, 2018, upon consideration of the transcript, the video [from the MVR], [appellant's] brief filed on April 4, 2018, and the Commonwealth's brief filed on April 13, 2018, th[e trial] court entered an order with findings of fact and conclusion of law denying [appellant's] ***omnibus*** pre-trial motion.

Trial court Rule 1925(a) opinion, 10/22/19 at 1-4 (extraneous capitalization and quotation marks omitted; emphasis added).

Appellant was charged with multiple counts of DUI and various Motor Vehicle Code ("MVC") violations. Immediately prior to the commencement of trial, the Commonwealth withdrew all of the charges except one count of DUI

- 3 -

– Schedule I controlled substance. On April 9, 2019, appellant waived his right to a jury and proceeded to a bench trial before the Honorable Steven R. Serfass. Following a one-day trial, the trial court found appellant guilty of DUI – Schedule I controlled substance. Thereafter, on August 1, 2019, the trial court sentenced appellant to 72 hours' to 6 months' imprisonment. This timely appeal followed.[4]

Appellant raises the following issues for our review:

> 1. Whether the [t]rial [c]ourt's factual finding that Officer Broyles could not confirm [a]ppellant's license plate until after Officer Broyles completed the traffic stop is supported by the record since the dashcam video from Officer Broyles' police vehicle contradicts his testimony and demonstrates that [a]ppellant's license plate was illuminated and readable prior to the initiation of a traffic stop?
>
> 2. Whether Officer Broyles conducted a legal traffic stop of [a]ppellant's vehicle when the dashcam footage shows that [a]ppellant's license plate was illuminated and readable prior to the initiation of the traffic stop?

Appellant's brief at 4.

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression

---

[4] On September 13, 2019, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant complied with the trial court's order and filed his timely Rule 1925(b) statement on September 19, 2019. The trial court filed its Rule 1925(a) opinion on October 22, 2019.

> motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted).

It is well established that:

> A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce

> the provisions of the code. 75 Pa.C.S.[A.] § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop.

*Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa.Super. 2013) (citation omitted), *appeal denied*, 79 A.3d 1096 (Pa. 2013).

Our supreme court has defined probable cause as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the stop, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) (citations omitted), *cert. denied*, ___ U.S. ___, 136 S.Ct. 201 (2015).

The crux of appellant's first claim is that Officer Broyles' traffic stop was unlawful because "[t]he trial court's factual finding that . . . Officer Broyles could not read [appellant's] license plate without initiating a traffic stop" is not supported by the record. (Appellant's brief at 10.) In support of this contention, appellant avers that the dashcam footage from the vehicle's MVR demonstrates that "[appellant's] license plate was fully illuminated at all times." (*Id.* at 8, 13; *see also* Exhibits D-F (still MVR images) and G (CD of dashcam MVR).) We disagree.

Our review of the record supports the trial court's determination that Officer Broyles articulated sufficient facts to justify his stop of appellant's vehicle for a violation of the MVC. "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even it if is a minor offense." ***Commonwealth v. Calabrese***, 184 A.3d 164, 167 (Pa.Super. 2018) (citation omitted). Here, appellant's vehicle was stopped for an inoperable license plate lamp, in violation of 75 Pa.C.S.A § 4303(b), which provides as follows:

> **(b)    Rear lighting.--**Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department.  If a vehicle is equipped with a centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable State and Federal regulations.

75 Pa.C.S.A. § 4303(b).

Officer Broyles testified that at approximately 11:15 p.m. on the evening of September 19, 2017, he effectuated a traffic stop of appellant's vehicle after observing that one of the vehicle's two license plate lamps – specifically, the "passenger-side registration lamp" – was inoperable and that the remaining lamp failed to fully illuminate appellant's license plate.  (Notes of testimony, 12/20/17 at 6, 17.)  On cross-examination, Officer Broyles disagreed with defense counsel's characterization that the license plate was "illuminated" and reiterated that he "was not able to confirm the registration

plate until **after** [appellant's] vehicle was stopped." (***Id.*** at 17.) As recognized by the Commonwealth, the MVR in Officer Broyles' vehicle and the still images set forth in appellant's brief supports these conclusions. The still MVR images of appellant's license plate depicted in Exhibits D and E clearly do not show a legible registration number. (***See*** appellant's brief at Exhibits D, E.) The MVR (Exhibit G) demonstrates that the still MVR image of appellant's license plate depicted in Exhibit F was not taken until after Officer Broyles had activated his overhead lights and initiated a traffic stop of appellant's vehicle and, in any event, shows only a partially legible registration number. (***Id.*** at Exhibits G, F; ***see also*** Commonwealth's brief at 6.) Based on the forgoing, we find that the record supports the trial court's factual findings, and appellant's first claim of trial court error must fail.

Appellant next takes issue with the trial court's legal conclusion that Officer Broyles had probable cause to stop appellant's vehicle for one inoperable registration plate light where the vehicle's remaining registration plate light was illuminated and operable. (Appellant's brief at 14.) In support of this contention, appellant argues that the trial court's conclusion is contrary to this court's decision in ***Commonwealth v. Banks***, 145 A.3d 794 (Pa.Super. 2016) (unpublished memorandum) (affirming an order granting appellee's suppression motion on the basis of the suppression court's opinion, which concluded that the police lacked probable cause to effectuate a traffic

stop where one of the vehicle's two registration lamps was inoperable), **appeal denied**, 166 A.3d 1225 (Pa. 2017). (Appellant's brief at 16-18.)

Preliminarily, we recognize that **Banks** is a non-precedential decision and is not binding on this court. In any event, **Banks** is clearly distinguishable from the instant matter. Relying on the trial court's opinion, the **Banks** court noted that "[n]owhere in [the police officer's] testimony before [the trial court] or in the Affidavit of Probable Cause do we find any indication that the officers were unable to view the Appellee's license plate." **Banks**, 145 A.3d 794 (unpublished memorandum at *4, quoting trial court opinion, 8/20/15.) However, in the case **sub judice**, there was testimony by Officer Broyles that the remaining license plate lamp on appellant's vehicle **did not** properly illuminate his license plate. (Notes of testimony, 12/20/17 at 17.)

We find that our holding in **Commonwealth v. Salter**, 121 A.3d 987 (Pa.Super. 2015), is dispositive of this issue. In **Salter**, a panel of this court reversed the suppression court's determination that the police lacked probable cause to stop the defendant's vehicle for a violation of the MVC where the vehicle's license plate was not illuminated. **Id.** at 993-994. In reaching this conclusion, the **Salter** court explained:

> Section 4303 of the Vehicle Code states that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, **in conformance with regulations of the department**." 75 Pa.C.S.A. § 4303(b). Department regulations at 67 Pa.Code §§ 175.80(a)(9)(i) and 175.66(k) provide **a vehicle is not in compliance**

> **with the [MVC] if "[a]n exterior bulb or sealed beam, if originally equipped or installed, fails to light properly,"** and "the registration plate lamp shall emit white light and make the registration plate visible from [a] distance of 50 feet to the rear of the vehicle."

***Salter***, 121 A.3d at 993 (emphasis added).

As discussed, Officer Broyles testified that he observed that one of the two license plate lamps on appellant's vehicle was not illuminated, to the extent that he could not fully confirm the registration number, and effectuated a traffic stop on this basis. (Notes of testimony, 12/20/17 at 17.) Contrary to appellant's contention, the fact that one of the license plate lamps on his vehicle remained operational does not negate the requirement of Section 4303(b) and the department regulations referenced therein that a light "originally equipped or installed" on a motor vehicle must be in full working order. ***See*** 67 Pa.Code §§ 175.66(k) and 175.80(a)(9)(i); ***see also Commonwealth v. Muhammed***, 992 A.2d 897, 902-903 (Pa.Super. 2010) (upholding legality of traffic stop for violation of Section 4303 of the MVC where a vehicle's "originally equipped or installed" exterior center-mounted brake light was inoperable, even though this light was optional and not specifically required under the MVC and the vehicle's left and right brake lights were operating properly). Based on the foregoing, we find that the trial court's legal conclusion that Officer Broyles possessed the requisite probable cause to stop appellant's vehicle for one inoperable registration plate light was not in error and that appellant's second claim must fail.

Accordingly, we discern no error on the part of the suppression court in denying appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/20