J-A15017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSE BENITEZ | : | |
| | : | |
| Appellee | : | No. 1462 EDA 2019 |

Appeal from the Order Entered April 29, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005816-2017

BEFORE: LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 15, 2020**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, granting the suppression motion of Appellee, Jose Benitez.[1] We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. On May 22, 2017, Sergeant Brian Myers of the Philadelphia Police Department

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case. Accordingly, this appeal is properly before us for review. **See Commonwealth v. Cosnek**, 575 Pa. 411, 421, 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

conducted surveillance at 3329 Bleigh Avenue, responding to complaints about several Hispanic men entering and exiting the property while carrying packages. (*See* N.T. Hearing, 4/29/19, at 28). Sergeant Myers observed two Hispanic men exit the property and enter a white Acura parked out front. (*Id.* at 32). The sergeant followed the Acura to 7347 Belden Street, where one of the occupants entered the house carrying a box of diapers. (*Id.* at 33). The same man left the house approximately five minutes later and reentered the Acura. (*Id.*) Sergeant Myers followed the Acura back to 3329 Bleigh Avenue, where the two men parked and went back inside the house. (*Id.* at 33-34).

Another unidentified male arrived at the house and went inside for approximately fifteen minutes. (*Id.* at 34). Then, the three men exited the house together, entered the Acura, drove to Crispin Street, and pulled over. (*Id.*) A white Nissan pulled up behind the Acura. (*Id.*) Sergeant Myers recognized the Nissan from a prior investigation. (*Id.* at 38). The driver of the Acura exited his vehicle, entered the Nissan, remained there for three to five minutes, returned to the Acura, and drove off. (*Id.* at 35).

Sergeant Myers followed the Nissan until it parked at the intersection of Stanwood and Eastwood Streets. (*Id.*) A short time later, a white Jeep Cherokee arrived and parked in front of the Nissan. (*Id.*) The driver of the Nissan exited his vehicle and entered the front passenger seat of the Jeep. (*Id.* at 36). After five minutes, the Nissan driver exited the Jeep, returned to the Nissan, retrieved an object, and gave it to the Jeep driver. (*Id.* at 37).

Following this exchange, both vehicles left the scene and Sergeant Myers concluded his surveillance. (*Id.*) Significantly, Sergeant Myers did not observe Appellee or his co-defendant, Yasser Almanzar,[2] during the May 22, 2017 surveillance.

On May 24, 2017, Sergeant Myers returned to 3329 Bleigh Avenue to conduct additional surveillance. (*Id.* at 43). Sergeant Myers received assistance from Officer Edward Slater, who was conducting surveillance of the white Jeep at 2204 Stanwood Street. (*Id.*) Officer Slater observed Appellee exit the property and walk to the Jeep. (*Id.* at 44). At the same time, Mr. Almanzar arrived in a white Chevrolet Malibu, which he "backed up to the white Jeep, so the trunk of the Chevy was facing the trunk of the" Jeep. (*Id.*) Appellee retrieved a large, green bag from the trunk of the Jeep and transferred it into the trunk of the Chevrolet. (*Id.* 44-45). Mr. Almanzar drove off in the Chevrolet, and Appellee subsequently left in the Jeep. (*Id.* at 49, 59).

Officer Slater followed the Chevrolet, and Sergeant Myers joined the pursuit. (*Id.*) Once the Chevrolet pulled over on the 3000 block of Gilford Street, Sergeant Myers decided to stop the vehicle for further investigation. (*Id.* at 50). A search of the trunk revealed 1,150 bundles of heroin inside the green bag. (*Id.* at 53). Sergeant Myers contacted a back-up officer and

---

[2] Mr. Almanzar is the appellee in a related appeal, docketed at 1463 EDA 2019.

ordered him to conduct a stop of Appellee in the Jeep. (*Id.* at 59). The back-up officer stopped the Jeep, but did not discover any drugs. (*Id.* at 59). An additional search of the residence at 2204 Stanwood Street yielded cellphones and cash, but no drugs or drug paraphernalia. (*Id.* at 18).

The Commonwealth charged Appellee and Mr. Almanzar with possession of a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and criminal conspiracy.[3] On July 26, 2017, Mr. Almanzar filed an omnibus pretrial motion to suppress all evidence obtained as a result of the warrantless vehicle search. Appellee filed his own suppression motion on September 14, 2018. On April 29, 2019, the court conducted a joint suppression hearing.

At the hearing, Sergeant Myers testified that he had been involved with "[o]ver a thousand" narcotics investigations in the past eighteen years. (N.T. Hearing at 23). Sergeant Myers explained that the property subject to the initial complaints, 3329 Bleigh Avenue, had iron bars covering the windows and doors on the first floor. (*Id.* at 29). Sergeant Myers claimed he had seen a similar setup "one other time, probably a year before" in a previous narcotics investigation in the same neighborhood. (*Id.* at 30).

Ultimately, Sergeant Myers provided the reasons for his decision to stop Mr. Almanzar in the Chevrolet. Sergeant Myers "believed a large amount of

---

[3] 35 P.S. § 780-113(a)(16), (30), (32), and 18 Pa.C.S.A. § 903, respectively.

narcotics were in the trunk of" the Chevrolet. (*Id.* at 50). Sergeant Myers based his decision on the following:

> Based on the observations that we [saw] on Stanwood Street on the 22nd [of May] and quick meetings between different people in different vehicles, leaving the area, the bag being transferred from the Jeep to the Chevy, my past investigations, being familiar with the cars being utilized, again, the Chevy[4] and Nissan.

(*Id.* at 51).

Officer Slater testified that he had served as a police officer for twelve years with two-and-a-half years of narcotics work. (*Id.* at 73). Officer Slater had conducted approximately ten narcotics investigations in the neighborhood at issue, "usually pertaining to bag houses of heroin." (*Id.* at 72). Although Officer Slater observed Appellee retrieve the bag from the trunk of the Jeep and transfer it to the Chevrolet, he did not observe any drugs or the exchange of money. (*Id.* at 86-89).

Mr. Almanzar also testified, stating he had received permission to drive the Chevrolet from a man named "Jose." (*Id.* at 92). Although Jose was "not

---

[4] Earlier in his direct examination, Sergeant Myers stated that he had seen the same Chevrolet during a prior investigation. (N.T. Hearing at 47). Defense counsel objected, the court sustained the objection, the parties discussed the matter further, and defense counsel withdrew his objection. (*Id.* at 47-48). Following the withdrawal of the objection, the prosecutor did not immediately resume her line of questioning concerning Sergeant Myers' prior encounter with the Chevrolet. (*Id.* at 49). When Sergeant Myers subsequently reiterated that his prior encounter with the Chevrolet contributed to his decision to stop the vehicle on this occasion, defense counsel did not object to the testimony. (*Id.* at 51).

really a close friend," Mr. Almanzar asked to borrow the Chevrolet after seeing Jose "one day at the barbershop." (***Id.*** at 92, 94). Mr. Almanzar told Jose he "needed to pick up baby clothes," and Jose agreed that he could use the car for the day. (***Id.*** at 98).

Immediately following the hearing, the court found "the evidence to be insufficient to meet probable cause for stopping" the Chevrolet, and it suppressed the drugs obtained as a result of the vehicle search. (***Id.*** at 119). The Commonwealth timely filed a notice of appeal on May 21, 2019. On May 23, 2019, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed its Rule 1925(b) statement on June 12, 2019.

The Commonwealth raises three issues on appeal:

> Did the suppression court err in concluding that the search of a vehicle violated [Appellee's] Fourth Amendment rights despite his failure to establish a reasonable expectation of privacy and where, in any event, there was probable cause to search?

> Did the suppression court err in precluding the Commonwealth from entering evidence of the officers' prior observation and experiences that was directly relevant to the totality of the circumstances supporting probable cause?

> Did the suppression court err in failing to consider the officer's extensive experience where a nexus existed between the experience and the observations made in this case?

(Commonwealth's Brief at 4).

In its first issue, the Commonwealth argues the suppression court "did

- 6 -

not hold [Appellee] to his threshold burden to prove that he had a reasonable expectation of privacy in the searched vehicle." (***Id.*** at 14). The Commonwealth insists Appellee did not own the vehicle, and he "was not even present in it at the time of the search." (***Id.***) The Commonwealth concludes Appellee did not have a reasonable expectation of privacy in the vehicle or its contents, and this Court must reverse the suppression order on this basis. We agree.

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are well-settled:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v.***

***Elmobdy***, 823 A.2d 180, 183 (Pa.Super. 2003), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004) (internal citations omitted).

"The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Powell***, 994 A.2d 1096, 1103 (Pa.Super. 2010), *appeal denied*, 608 Pa. 665, 13 A.3d 477 (2010) (quoting ***Commonwealth v. Hawkins***, 553 Pa. 76, 80, 718 A.2d 265, 266 (1998)). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa.Super. 2011) (quoting ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa.Super. 2009) (*en banc*)).

> Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element[,] the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether [a] defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether [a] defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

***Powell, supra*** at 1103-04 (quoting ***Commonwealth v. Burton***, 973 A.2d

428, 435 (Pa.Super. 2009) (*en banc*)) (internal citations omitted).

Regarding challenges to the search of an automobile, we note:

[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.

An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Burton, supra* at 435 (internal quotation marks omitted). *See also Commonwealth v. Brown*, 64 A.3d 1101, 1106-07 (Pa.Super. 2013), *appeal denied*, 622 Pa. 747, 79 A.3d 1096 (2013) (holding defendant failed to establish reasonable expectation of privacy in vehicle where he offered no evidence of permission to drive from vehicle owner).

Instantly, Mr. Almanzar testified that the owner of the Chevrolet gave him permission to use the vehicle. Appellee, however, did not present any evidence demonstrating his connection to the vehicle. Likewise, Appellee did not even occupy the Chevrolet at the time of the search. Absent more, Appellee had no demonstrable, reasonably cognizable expectation of privacy in a vehicle he did not own and for which he could show no authority to occupy or operate. *See Burton, supra*; *Powell, supra*. Thus, the court should have denied Appellee's suppression motion concerning the contraband recovered

from the Chevrolet.[5]  Accordingly, we reverse the order granting Appellee's suppression motion and remand for further proceedings.[6]

Order reversed; case remanded for further proceedings.  Jurisdiction is relinquished.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2020

_____

[5] In the appeal at 1463 EDA 2019, we determined the court properly granted Mr. Almanzar's suppression motion.  Although it may appear incongruous not to reach the same result for Appellee, we reiterate that a defendant cannot vicariously assert the privacy rights of others.  **See Powell, supra** at 1107-08 (explaining defendant cannot prevail upon suppression motion unless he demonstrates that challenged police conduct violated his own personal privacy interests; appellee did not establish violation of personal privacy rights, even though court properly granted co-appellee's suppression motion).

[6] Due to our disposition, we need not address the Commonwealth's remaining issues.