J-A27009-20

2021 PA Super 53

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STEVEN TILLERY | |
| Appellee | No. 1219 EDA 2019 |

Appeal from the Order Entered April 2, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0006849-2018

BEFORE:  STABILE, J., NICHOLS, J., and COLINS, J.[*]

OPINION BY STABILE, J.:                    **FILED:  MARCH 26, 2021**

The Commonwealth appeals from the April 2, 2019 order entered in the Court of Common Pleas of Philadelphia County, granting the motion to suppress filed by Appellee, Steven Tillery.[1]  Upon review, we affirm.

In **Commonwealth v. Cartegena**, 63 A.3d 294 (Pa. Super. 2013) (*en banc*), this Court reiterated:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate.  [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In accordance with Pa.R.A.P. 311(d), the Commonwealth certified in its notice of appeal that "this order terminates or substantially handicaps the prosecution."  Commonwealth's Notice of Appeal, 4/24/19.

defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Id.* at 298 (quoting *In re O.J.*, 958 A.2d 561, 564 (Pa. Super. 2008) (*en banc*) (in turn quoting *Commonwealth v. Mistler*, 912 A.2d 1265, 1268-69 (Pa. 2006) (additional citations omitted)). As this Court has explained, "Our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Copenhaver*, 238 A.3d 509, 513 (Pa. Super. 2020) (quoting *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa. Super. 2016) (alteration and additional citation omitted)).

As indicated in *Cartegena*, this Court must determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Ordinarily, we would look to the findings of fact entered on the record at the conclusion of the suppression hearing. However, in this case, the suppression court did not enter on the record a statement of

findings of fact, as directed by Pa.R.Crim.P. 581.[2]  Therefore, because Appellee prevailed in the suppression court, "we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole." *Cartegena*, 63 A.3d at 298.  *See also Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005) (where suppression court fails to issue specific findings of fact, "the appellate court should consider only the evidence presented by the prevailing party and so much of the evidence of the other side, as fairly read in the context of the record as a whole, that remains uncontradicted.")

Appellee presented one witness at the suppression hearing, his brother, Kalil Tillery ("Kalil").  Kalil indicated he was a passenger in the car operated by Appellee at 1:30 a.m. on August 22, 2018.  Notes of Testimony, 4/1/19, at 30.  The car was stopped by officers, including Commonwealth witness, Officer Kanan, but the officers did not use their lights or sirens until Appellee stopped the car.  *Id.*  Kalil testified that the officers did not say why they stopped the car and did not ask Appellee for his license and registration. Rather, from the time the officers approached the car, Officer Kanan was talking to Appellee, saying that he knew him.  *Id.* at 31.  Officer Kanan asked

---

[2] Pa.R.Crim.P. 581(I) provides that "[a]t the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought."

Appellee to get out of the car. Appellee asked why and the officer again asked him to get out of the car. Appellee complied and the officer took him to the back of the car. Kalil said that the officer did not ask Appellee if he had a weapon in the car. *Id.* Eventually, Kalil also was removed from the car. *Id.*

In addition to Kalil's testimony, there is Commonwealth evidence that remained uncontradicted in the context of the record as a whole. For instance, Appellee stopped his car in a parking spot outside a grocery store on the 6400 block of Woodland Avenue in Philadelphia, a block from the police station. Officer Kanan, a two-year veteran of the department, stated he stopped Appellee's car and initiated an investigation because Appellee pulled the car into the parking spot right in front of Cousin's Supermarket without using a turn signal. Officer Kanan admitted that upon approaching the car, he did not observe any furtive movements, did not detect any odor of marijuana or alcohol, and did not see any contraband or bulges in anyone's clothes. *Id.* at 7, 11, 14, and 15. Officer Kanan searched the car and recovered a gun from the center console of the car. *Id.* at 9.

Although the suppression court did not issue findings of fact, the court did address the credibility of Officer Kanan in its Rule 1925(a) opinion. As our Supreme Court has instructed, this Court cannot upset the credibility determinations of the suppression court, "within whose sole province it is to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Poplawski*, 130 A.3d 697, 711 (Pa. 2015).

Here, the suppression court stated:

[T]he court did not find the testimony of the Commonwealth's lone witness to be credible. In addition to assessing his demeanor on the witness stand, the court found Officer Kanan's testimony itself to be vague and conclusory (*see, e.g.*, N.T. 04/01/19 at 7) (stating that he stopped Appellee for pulling into an "illegal parking spot" without elaboration), and internally inconsistent (*see, e.g.*, N.T. 04/01/19 at 9, 22-25) (flip-flopping repeatedly on whether Appellee made the alleged statement about the gun before or after it was recovered, as well as the number of times he made such a statement). In sum, Officer Kanan's testimony, in conjunction with his overall demeanor on the witness stand, rendered his testimony incredible. As such, for this reason alone, the court's ruling should not be disturbed.

Suppression Court Rule 1925(a) Opinion, 2/18/20, at 8 (citations and some capitalization omitted). Again, it is within the suppression court's sole province to pass on witness credibility and this Court cannot upset credibility determinations. *Poplawski*, 130 A.3d at 711.

At the conclusion of the proceedings on April 1, 2019, the court took the matter under advisement. The court reconvened the proceedings the following day and entered an order granting Appellee's motion to suppress, announcing its conclusion of law, *i.e.*, "The police did not have reasonable suspicion or probable cause to stop the defendant and also remove him from the car." Notes of Testimony, 4/2/19, at 3. This timely appeal followed. The Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth presents two issues for our consideration:

I.     Did the [suppression] court err in suppressing a gun police found in the center console of the car [Appellee] was driving, with his brother as a passenger, where the police stopped the car for a traffic violation at 1:30 in the morning,

- 5 -

> [Appellee] acted nervously and declined to respond to the officer's inquiries about whether there was a weapon in the car, the officer told him to exit the car and he was slow to respond, when he finally got out he immediately ran away, and when police apprehended him he blurted out that [] "the gun" was his and not his brother's?

II. Did the [suppression] court err in suppressing [Appellee's] blurted statement as poisonous fruit of a supposedly illegal stop?

Commonwealth Brief at 4. We shall address these issues together.

We have summarized the evidence of Appellee and the evidence of the Commonwealth that remains uncontradicted in the record. Therefore, we may reverse only if the suppression court's legal conclusions are in error.

With respect to a traffic stop, this Court has observed:

> A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop.

*Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010)).

> Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

*Id.* (quoting *Commonwealth v. Chase*, 960 A.2d 108, 115 (Pa. 2008)).

Here, Officer Kanan contended he and his partner stopped Appellee's vehicle when Appellee pulled into a parking spot without using a turn signal.[3] The statute governing use of signals provides, in relevant part, as follows:

**§ 3334. Turning movements and required signals**

**(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. § 3334(a). Because the "violation" required no additional investigation, the officers were required to have probable cause to initiate the stop. **Brown**, 64 A.3d at 1105.

The suppression court considered the language of Section 3334(a) in the context of the statutory construction principles set forth in 1 Pa.C.S.A. § 1921 and concluded:

Applying [principles of statutory construction], under the plain words of the statute at issue, a turn signal is required when

_____

[3] The Commonwealth initially asserted that Appellee was also stopped for parking in an illegal parking spot. The suppression court suggests the Commonwealth abandoned that argument on appeal, **see** Suppression Court Rule 1925(a) Opinion, 2/18/20, at 8 n.2. The Commonwealth contests this assertion, **see** Commonwealth Brief at 17 n. 2, contending it was challenging suppression based on both violations. However, at the suppression hearing, the Commonwealth did not present any evidence that Appellee pulled into an illegal parking spot. Rather, the Commonwealth simply noted that Appellee pulled into a parking spot "right in front of Cousin's Supermarket," Notes of Testimony, 4/1/19, at 14. There was no testimony or evidence to support that the spot was an illegal parking spot. Again, our scope of review is limited to the evidentiary record that was created at the suppression hearing. **Copenhaver**, 238 A.3d at 513.

> moving "**from one traffic lane to another [traffic lane]**" or when "**enter[ing]** the traffic stream from a parked position." The statute does **not** require a turn signal when moving **from** a traffic lane to a parking position.

Suppression Court Rule 1925(a) Opinion, 2/18/20, at 7 (emphasis in original).

As the court recognized, "the legislature certainly had the ability to include such a proscription had it intended to do so, but it did not. As such, the court may not 'read into the statute terms that broaden its scope.'" ***Id.*** (quoting ***Commonwealth v. Booth***, 766 A.2d 843, 846 (Pa. 2001)). "Indeed, this interpretation is further supported by the 'statutory **mandate** that penal statutes shall be strictly construed.'" ***Id.*** (quoting ***Commonwealth v. McCoy***, 962 A.2d 1160, 1168 (Pa. 2009) (emphasis in original) (additional citation and internal quotations omitted).

The suppression court determined:

> Because [Section 3334(a)] does not require a motorist to use a turn signal when pulling into a parking position, the purported basis for the initial stop in the case was invalid from the start. Accordingly, the evidence and alleged statement subsequently obtained were tainted by the unconstitutional action, and thus properly suppressed as fruits of the poisonous tree. ***See Wong Sun v. United States***, 371 U.S. 471, 485-86 (1963); ***Commonwealth v. Shabezz***, 166 A.3d 278, 290 (Pa. 2017).

***Id.*** at 8 (footnote omitted).

Neither party cites any binding authority holding that a driver must use a turn signal before pulling into a parking spot. Our research has similarly failed to unearth any such authority, although the issue was mentioned in ***Commonwealth v. Richard***, 238 A.3d 522 (Pa. Super. 2020). In ***Richard***,

the suppression court granted Richard's suppression motion, finding the arresting officers did not have probable cause to stop Richard based on pulling into a parking spot without using a turn signal. We reversed. However, the reversal was not based on Richard's failure to use a turn signal when pulling into a parking spot. Rather, we reversed because the suppression court failed to consider a separate basis for the traffic stop, *i.e.*, prior to initiating the stop, the officers had determined Richard's car was unregistered. Because the stop was justified on that basis, the Court went on to discuss the propriety of the search without returning to the question of whether Richard's failure to use a turn signal was a violation of Section 3334(a).[4]

---

[4] By happenstance, the officer in **Richard** was the same officer involved in Appellee's case, and he used similar language to describe Richard's driving maneuver, as reflected in this Court's summary of evidence from Richard's suppression hearing:

> On November 5, 2017, at approximately 2:10 a.m., Philadelphia Police Officer Abdel Kanan was on patrol in his marked vehicle when he observed a blue Ford traveling eastbound on Kingsessing Avenue. . . . Officer Kanan checked the license plate of the vehicle when the vehicle "abruptly pulled into a parking spot without using a turning signal." At the same time, the record to the vehicle showed it was not registered. Officer Kanan then "activated his lights and sirens to initiate a vehicle investigation."

**Richard**, 238 A.3d at 527 (references to notes of testimony and alterations omitted). At Appellee's hearing, Officer Kanan explained on directed examination that he observed a gray Pontiac, which "suddenly turned into an illegal parking spot without using a turn signal. At this point we activated lights and sirens to initiate a vehicle investigation." Notes of Testimony, 4/1/19, at 7. On cross-examination, he testified, "It pulls—goes into the

The Commonwealth directs our attention to an unpublished memorandum issued by this Court eight months prior to our published opinion in **Richard**. In **Commonwealth v. Puit**, 2020 WL 211536 (Pa. Super. January 14, 2020), Puit was convicted of driving under the influence and other offenses following a stop based on pulling his vehicle into a parking space without using his turn signal. The suppression court denied Puit's suppression motion based on testimony of the arresting state trooper who testified "he was trained on the Vehicle Code, and that a driver is required to use a turn signal when leaving or entering a lane of travel." **Id.** at \*2. Affirming the denial of suppression, the panel determined that "because the Code requires a driver to signal to other drivers his intention **to move out of the flow of traffic**, it was objectively reasonable for [the trooper] to believe that Section 3334(b) requires a driver to signal when he pulls out of the travel lane to park his car." **Id.** (emphasis added).[5] The Commonwealth cited **Puit** for its

_____

parking spot. We were behind it driving and then it suddenly turns into the illegal parking spot. . . . Once he pulled over without using a turn signal we activated our lights and sirens." **Id.** at 12-14.

[5] Section 3334(b) provides:

> **(b) Signals on turning and starting.--**At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

persuasive value, citing Pa.R.A.P. 126(b).  However, not only are we not bound by *Puit*, but also we do not agree with the panel's reading of the Code—whether Section 3334(b) cited by that panel, or Section 3334(a), which was at issue in the instant case—because neither subsection imposes a duty to signal an intention "to move out of the flow of traffic."  Moreover, as Appellee suggests, *Puit* is inapposite.

> The court in *Puit* applied the mistake of law doctrine described in *Heien v. North Carolina*, 574 U.S. 54, 67 (2015) to uphold a traffic stop for failure to use a turn signal when pulling over to park.  The doctrine allows that in certain rare circumstances, where the law is unclear, an officer's objectively reasonable misapplication of the law to justify a stop will not invalidate a stop. *Heien*, 574 U.S. at 66-67.  This principle does not provide an officer leeway "through a sloppy study of the laws he is duty-bound to enforce." *Id.* at 67.

> While a trained and experienced officer might, in rare cases, be given the benefit of the mistake of law doctrine described in *Heien*, and applied in *Puit*, such leeway is not due here.  The court in *Puit* was faced with a state trooper specifically trained on the Vehicle Code, who stopped the defendant for one reason only, and whose testimony was unmarred by adverse credibility findings.  Officer Kanan, unlike the trooper in *Puit*, presented no testimony as to his training and experience.  His second reason for stopping Appellee was clearly erroneous:  Appellee pulled the car over in a[n] "illegal parking spot."  Not only did the officer fail to explain what prohibitions against stopping existed at the location where Appellee stopped his car, it is not illegal to stop a car in a no parking zone.  75 Pa.C.S.A. § 3353 (delineating varying prohibitions against stopping a car or, separately, parking a car in

---

75 Pa.C.S.A. § 3334(b).

various locations and zones). The suppression court also made adverse credibility findings against Officer Kanan.

Appellee's Brief at 17-18 (some capitalization and references to notes of testimony omitted).

We find **Puit** inapposite, in addition to being non-binding, and conclude the panel's reading of Section 3334 in that case improperly broadened the scope of the statute beyond the plain terms adopted by the legislature. Simply stated, the terms of the statute require that a person shall not "turn a vehicle[6] or move from one traffic lane to another or enter the traffic stream from a parked position" without giving a signal. 75 Pa.C.S.A. § 3334(a). The statute does not address "mov[ing] out of the flow of traffic," contrary to the **Puit** panel's assertion, or require the use of a turn signal to pull into a parking place.

Appellee was not required under Section 3334(a) to use his turn signal, nor did he violate the Vehicle Code by pulling into a parking spot in front of a supermarket. Therefore, there was no probable cause to justify the stop of Appellee's vehicle. **Cf. Slattery**, 139 A.3d at 224 (where trooper incorrectly believed Section 3334(b) required a driver to signal at least 100 feet before

---

[6] With respect to "turning," in **Commonwealth v. Slattery**, 139 A.3d 221 (Pa. Super. 2016), this Court noted that the language of Section 3334 "is consistent with the interpretation that the term 'before turning' means before a vehicle makes a turn onto another roadway, not before a person changes lanes." **Id.** at 224.

changing lanes, there was no probable cause to justify the stop of the vehicle). Because the officers did not have probable cause to seize the vehicle, the suppression court correctly concluded that the gun discovered during the subsequent search, as well as statements attributed to Appellee by Officer Kanan, must be suppressed as fruit of the poisonous tree.

We have summarized the evidence in accordance with **Cartegena** and **Millner** and we accept the suppression court's credibility findings with respect to Officer Kanan. Further, we find no error in the court's legal conclusion, *i.e.*, that "[t]he police did not have reasonable suspicion or probable cause to stop the defendant and also remove him from the car." Notes of Testimony, 4/2/19, at 3. Because the suppression court properly applied the law to the facts, we affirm the suppression court's order.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/21