J-A21005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| IAN SAMUEL LAKE | : | No. 441 EDA 2022 |

Appeal from the Order Entered January 12, 2022
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000419-2020

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:　　　　　　　**FILED NOVEMBER 14, 2022**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Pike County, granting Ian Samuel Lake's motion to suppress.[1]  After our review, we affirm.

The suppression court summarized the factual history as follows:

At approximately 12:05 p.m. on June 10, 2020, Pennsylvania State Trooper William Golden ("["Trooper] Golden") was on patrol in a marked vehicle when he noticed a vehicle traveling westbound on Interstate 84 in Pike County, Pennsylvania, with heavy tint on

_____

[1] The Commonwealth included in its notice of appeal a certification that suppression would substantially hinder its prosecution of the case. **See** Notice of Appeal, 2/9/22. See also Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."); **Commonwealth v. James**, 69 A.3d 180, 185 (Pa. 2013) (Commonwealth's appeal of suppression order is proper when Commonwealth certifies in good faith that suppression order substantially handicaps prosecution).

its windows. After initiating a traffic stop and speaking with the driver of the vehicle, Ian Samuel Lake ("[Lake]"), [Lake] granted consent for [Trooper] Golden to search the vehicle.[2] When [Trooper] Golden activated the trunk release, however, [Lake] revoked his consent to search.[3] [Trooper] Golden then requested the assistance of a canine unit, which was dispatched and arrived sixty (60) to ninety (90) minutes after the traffic stop was initiated. The canine then inspected the vehicle, giving a positive indication for the presence of narcotics. [Trooper] Golden then continued his search of the vehicle, eventually discovering a locked black bag in the trunk[,] which emanated an odor of marijuana. After [Lake] indicated he was unable to open the bag and did not have a key, [Trooper] Golden opened the bag and discovered both marijuana and THC oils used for vaping. [Lake] was then taken into custody and charged with one (1) count of each of Possession with Intent to Manufacture or Deliver a Controlled or Counterfeit Substance,[4] Possession of a Small Amount of Marijuana,[5] and Possession of Drug Paraphernalia.[6]

Suppression Court Opinion, 1/12/22, at 2-4.

On October 29, 2020, Lake filed a motion to suppress. On October 8, 2021, following a series of continuances, the court held a suppression hearing. After the hearing, on January 12, 2022, the suppression court granted Lake's motion to suppress, finding that Trooper Golden's search of the trunk of Lake's vehicle, after Lake withdrew his consent, was unlawful. The court, therefore, suppressed any items seized pursuant to that unlawful search.

---

[2] *See* N.T. Suppression Hearing, 10/8/21, at 14.

[3] *See id.* at 15.

[4] 35 P.S. § 780-113(a)(30).

[5] *Id.* at § 780-113(a)(31)(i).

[6] *Id.* at § 780-113(a)(32).

On February 2, 2022, the Commonwealth filed this timely appeal. The Commonwealth raises the following issues for our review:

1. Whether, under the totality of the circumstances, exigent circumstances exist where, during a routine traffic stop, police develop probable cause to believe a vehicle contains evidence of a crime and the driver is not in custody, justifying a warrantless search of the vehicle?

2. Whether the trial court committed an error of law when it granted in part the defendant's motion for writ of habeas corpus based upon its granting of the defendant's suppression motion of physical evidence?

Commonwealth's Brief, at 4 (rephrased for clarity).

Our review of an order granting a motion to suppress evidence is well-established:

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Tillery*, 249 A.3d 278, 280 (Pa. Super. 2021) (citation omitted). Further, this Court is not at liberty to reject a finding of fact that is

based on credibility. *Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa. Super. 2011).

The Commonwealth argues that the evidence presented at the suppression hearing was sufficient to support a finding that Trooper Golden executed a lawful, warrantless search of Lake's vehicle. The Commonwealth contends Trooper Golden possessed probable cause to believe evidence of a crime may be located in the vehicle, and there were exigent circumstances justifying a warrantless search. Commonwealth's Brief, at 9. We disagree.

Although the routine traffic stop was lawful—Trooper Golden possessed probable cause to stop based on the illegal window tint—once Lake withdrew his consent to search the vehicle, Trooper Golden was required to either (1) possess both probable cause that a crime was being committed *and* exigent circumstances; or (2) obtain a search warrant for the vehicle. *See Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). Having failed to do either, we agree with the suppression court that the continued search of the trunk of Lake's vehicle following the withdrawal of his consent was unlawful.

"The Fourth Amendment, by its text, has a strong preference for searches conducted pursuant to warrants." *Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) (citation omitted). In *Commonwealth v. Gary*, 91 A.3d 103 (Pa. 2014), the Pennsylvania Supreme Court, in a plurality decision, adopted the federal automobile exception to the warrant requirement, holding: "The prerequisite for a warrantless search of a motor

vehicle is probable cause to search; *no exigency beyond the inherent mobility of a motor vehicle is required*." *Id.* at 138 (emphasis added). The Opinion Announcing the Judgment of the Court explicitly stated that there was "no compelling reason to interpret Article I, Section 8 of the Pennsylvania Constitution as providing greater protection with regard to warrantless searches of motor vehicles than does the Fourth Amendment." *Id.* However, in *Alexander*, *supra*, our Supreme Court overruled *Gary*, and held that warrantless vehicle searches require *both* probable cause *and* exigent circumstances under the state constitution. *Alexander*, 243 A.3d at 207. The Court stated:

> As a result of today's decision, we return to the pre-*Gary* application of our limited automobile exception under Article I, Section 8 of our Constitution, pursuant to which warrantless vehicle searches require both probable cause and exigent circumstances; "one without the other is insufficient."

*Id.*, quoting *Commonwealth v. Luv*, 735 A.2d 87, 93 (Pa. 1999).

Instantly, Trooper Golden acknowledged at the suppression hearing that, at the time of the stop, he was operating under *Gary* case law, "which allowed me [to conduct] a warrantless search of the vehicle." N.T. Suppression Hearing, 10/8/21, at 23. Nonetheless, this Court has recently held that *Alexander*, in overruling *Gary*, announced a new criminal rule that applies to all criminal cases still pending on direct review, provided that the issue has been preserved at all stages of the adjudication up to and including direct appeal. *See Commonwealth v. Heidelberg*, 267 A.3d 492, 503 (Pa.

Super. 2021) (citing *Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (en banc) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below."). *See also Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983) ("where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.").

Here, Lake raised the warrantless search issue in his motion to suppress, challenging the search under both state and federal constitutional law. *See* Omnibus Pretrial Motion, 10/29/20, at 2-3. We find, therefore, that Lake has preserved this issue for our review.

> Obtaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was not reasonably practicable. . . . Courts will have to decide, just as they did pre-*Gary*, whether exigent circumstances justified warrantless searches in discrete scenarios, with a focus on the particular facts.

*Alexander*, *supra* at 208. Instantly, the suppression court determined there were no exigent circumstances. We agree.

At the hearing, Trooper Golden[7] testified that he was in a marked police vehicle, in uniform, and that he stopped Lake's vehicle due to the "heavy window tint."  N.T. Suppression Hearing, *supra* at 10-11.  Trooper Golden continued:

> I spoke with Mr. Lake about his travels, about his window tint.  He informed me he recently put the window tint on and he knows it to be about thirty percent[,] which is illegal and over the maximum amount[,] which is seventy percent allowed by law.  Mr. Lake stated he was on his way back to Pocono Summit[;] he was coming from a girlfriend's house in New York.  I asked him what was the location in New York?  He was unable to tell me where in New York, which struck me.

*Id.* at 11.  Trooper Golden testified that he observed Lake was "very nervous, very deceptive, nervous to the point where he was actually shaking while speaking with me."  *Id.* at 12.  When Trooper Golden returned to his police vehicle with the documents he had requested from Lake, he viewed Lake through Lake's side-view mirror "making furtive movements."  *Id.*  At this point, Trooper Golden's suspicions were aroused, and he asked Lake to step

---

[7] Trooper Golden was a member of the Scranton Police Department from 2008 to 2017, at which time he joined the Pennsylvania State Police.  N.T. Suppression Hearing, *supra* at 6. Trooper Golden participated in narcotics interdiction training at the local, state, and federal levels, including "Advanced Narcotics Interdiction, Advanced Vehicle Hides, S.H.I.E.L.D. [Safe Highway Initiative through Effective Law Enforcement Detection] training through the Pennsylvania State Police, how to determine truth and deceptive behavior, [and] 4:20 Interdiction."  *Id.* at 7-8.  Trooper Golden also stated that he has participated in over "a thousand drug arrests, investigations[,] and convictions."  *Id.* at 9.

out of the vehicle and asked for Lake's consent to search the vehicle. Lake consented to the search. *Id.* at 14. Trooper Golden testified:

> I began to search the vehicle[.] . . . So, within the vehicle on the passenger seat I located a small black bag. Within that black bag was a large amount of money mostly in the denomination of twenties. It appeared to me at the time it was going to be well over a couple of thousand dollars[.] I continued to search throughout the vehicle finding nothing else of indication. I then asked Mr. Lake about the money[,] and he again paused and distanced himself from the money stating it was his mother's birthday, which seemed like an odd answer to me when I asked whose money is it. . . . It wasn't until the third or fourth time he was asked where he reversed himself and then said that it was his and his father or stepfather's money. . . . [W]hen I got to the point of the trunk, once the trunk was popped from the interior of the of the vehicle, Mr. Lake [] withdrew his consent.

*Id.* at 14-15. After Lake withdrew his consent to the search, Trooper Golden testified that he requested a canine unit come to the scene of the traffic stop; the canine unit arrived approximately one hour later, performed "an exterior sniff around the vehicle[,]" and made a "positive indication for the odor of a narcotic." *Id.* at 16. Trooper Golden stated that he then conducted "a probable cause search [of] the rest of the vehicle[,]" *id.* at 17, and uncovered a locked bag, which Trooper Golden opened with a knife, and which contained "large amounts of leafy marijuana, as well as THC oils." *Id.* at 17, 52.

Regarding the substantive requirements of *Alexander*, we agree with the suppression court that the Commonwealth failed to establish that the warrantless search of the trunk of the vehicle and the locked bag was supported by both probable cause and exigent circumstances. The Commonwealth maintains that the facts, in totality, demonstrate exigent

circumstances.  Commonwealth's Brief, at 11.  This argument is meritless.  As the suppression court noted, Trooper Golden testified credibly that Lake did not present a threat to himself or the officers, that no weapons were found, and that Lake was the only occupant of the vehicle.  Trooper Golden testified:

> Q:  You searched him and found that he didn't have any weapons on him, correct?
>
> A:  No weapons.
>
> Q:  Because you had two state troopers there in full view of him he couldn't go run back to the car[,] get in the car[,] and destroy any evidence without you seeing and stopping him, correct?
>
> A:  Correct.
>
> *  *  *
>
> Q:  So, not only he withdrew his consent to search the car, you didn't get a warrant for the car, but you also didn't get a warrant for that locked bag, did you?
>
> A:  No. . . .  I did not get a search warrant for the bag.
>
> Q: Nothing would have stopped you from seizing that bag and going to get a search warrant for that bag like you have done hundreds of times before even in Pike County, even as a state trooper, correct?
>
> A: Other than the lengthy detention of Mr. Lake seizing his vehicle, impounding it in holding, contacting the District Attorney, contacting a Magistrate, authoring the search warrant, taking the search warrant to the Magistrate[,] having it approved or denied then returning back to search the vehicle, no.

N.T. Suppression Hearing, *supra* at 46-50.  *See Commonwealth v. Trahey*, 228 A.3d 520, 530 (Pa. 2020) (exigent circumstances will excuse warrantless search or seizure where Commonwealth establishes "compelling need [by officers] for official action and no time to secure a warrant.");

*Commonwealth v. Steward*, 740 A.2d 712, 717 (Pa. Super. 1999) (compelling need usually exists "either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals"); *see also Goldsborough*, *supra* (this Court may not reject finding of fact that is based on credibility).

Essentially, Trooper Golden proceeded as he did in order to avoid the inconvenience and delay in obtaining a warrant in rural Pike County. *Id.* at 19-21. However, under these facts, those concerns do not support a finding of exigent circumstances. There was no indication that the officers were in danger at any time,[8] or that potential evidence was in danger of being tampered with or destroyed. *Trahey*, *supra*; *Steward*, *supra*. Like the suppression court, we are unpersuaded by the Commonwealth's attempt to characterize the totality of the circumstances here as exigent.

After our review, we conclude the record supports the suppression court's factual findings, and the court's inferences and legal conclusions are correct. *Tillery*, *supra*; *Goldsborough*, *supra*. Accordingly, we affirm the order granting Lake's motion for suppression.[9]

---

[8] In fact, during the approximately two hours of the stop, including the time that elapsed while waiting for the canine unit, Trooper Golden and Lake had a friendly conversation about Lake's schooling, that he had recently gotten his master's degree, and that he had been a scholarship soccer player. *Id.* at 53-54.

[9] Because the Commonwealth's second claim pertaining to the partial grant of Lake's writ of habeas corpus is based on the argument that the suppression order was legal error, we need not address that issue.

- 10 -

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/14/2022*