J-A11016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NATHAN RYAN LENHARDT | : | |
| | : | |
| Appellant | : | No. 71 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002410-2018

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY NEUMAN, J.:                    **FILED: JUNE 16, 2026**

Appellant, Nathan Ryan Lenhardt, appeals from the judgment of sentence of 30 months' to 6 years' incarceration, imposed after he was found guilty of possession of a firearm with an altered manufacturer's number (18 Pa.C.S. § 6110.2(a)) and carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)).  Herein, Appellant solely argues the trial court erred by denying his pretrial motion to suppress evidence he claims was seized after an illegal *Terry* frisk.[1]  After careful review, we affirm.

We summarize the facts and procedural history of Appellant's case, as follows.  At 10:22 a.m. on May 1, 2018, Officer Kyle Morgan of the Boyertown Police Department was dispatched to 533 East 2nd Street, Boyertown, Berks

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

County, for a motorcycle parking complaint. *See* N.T. Hearing, 4/4/24, at 8. Officer Morgan knew there had been prior parking complaints and reports of criminal activity in this area. *Id.* at 11. Specifically, at a house located at 531 East 2nd Street, which was directly next door to 533, there had been three drug overdoses and one reported rape in recent months. *Id.* There were also reports suggesting prostitution was occurring at the 531 residence. *See id.* (Officer Morgan's testifying there were reports of "young women going in with overnight bags, staying for … approximately a couple hours, and then coming out to leave while a male that would deliver them to the residence would wait in the car and take them from the residence"). Officer Morgan knew there had been complaints about people parking behind the house at 533 when coming and going from the house at 531. *Id.* at 12.

Upon arrival, Officer Morgan located the motorcycle, discovered that the motorcycle's vehicle identification number (VIN) did not match any vehicle and, specifically, did not match the motorcycle. *Id.* at 8. Officer Morgan believed the motorcycle had been stolen, and watched the parking area for one hour. *Id.* at 9. During this time, he saw Appellant approach the motorcycle, *id.*, although he could not see from where Appellant had come, *id.* at 23. Officer Morgan engaged Appellant in conversation and learned that Appellant claimed to have purchased the motorcycle, but could not produce registration or insurance information. *Id.* at 12. Officer Morgan decided to conduct a frisk of Appellant, but before he touched him, the officer asked Appellant if he had any weapons on him. *Id.* Appellant admitted he had a

firearm in his back waistband, which the officer removed and discovered to be a loaded Taurus .357 handgun. *Id.* The weapon had a filed-off serial number, and Appellant did not have a license for the firearm. *Id.* at 13, 16. Ultimately, Appellant was informed of his *Miranda* rights and gave a statement admitting he had purchased the gun. *Id.*[2]

Appellant was arrested and charged with the above-mentioned firearm offenses, as well as persons not to possess a firearm (18 Pa.C.S. § 6105(a)(1)). On September 10, 2018, Appellant filed an omnibus pre-trial motion, which included a motion to suppress evidence on the grounds that Officer Morgan lacked reasonable suspicion to conduct the frisk of Appellant.[3] On April 4, 2024, the trial court conducted a suppression hearing.[4] On May 22, 2024, the court denied Appellant's motion to suppress.

On August 23, 2024, Appellant proceeded to a non-jury trial and was convicted of the above-mentioned offenses. On December 17, 2024, the trial court sentenced him to 30 months' to six years' incarceration, and a concurrent 7-year period of probation. Appellant's sentence was deferred pending this appeal. He did not file any post-sentence motions.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The omnibus pre-trial motion also included a petition for writ of *habeas corpus* seeking the dismissal of the charge of persons not to possess a firearm, which the trial court granted on May 22, 2024.

[4] It is unclear to this Court why it took 6 years to schedule a hearing on Appellant's pre-trial motion.

Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. On May 13, 2025, Appellant's counsel, William C. Bispels, Esquire, of the Berks County Office of the Public Defender, filed a petition to withdraw and *Anders* brief with this Court.[5] On August 12, 2025, we denied Attorney Bispels' petition to withdraw, concluding counsel had failed to fulfill the substantive requirements of *Anders* and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). *See Commonwealth v. Lenhardt*, No. 71 MDA 2025, unpublished memorandum at 7 (Pa. Super. filed Aug. 12, 2025) ("*Lenhardt I*"). Accordingly, we remanded for Attorney Bispels to either file a proper *Anders* brief or an advocate's brief on Appellant's behalf. *Id.* We retained panel jurisdiction. *Id.*

On September 11, 2025, Attorney Bispels filed another *Anders* brief and petition to withdraw. However, on November 4, 2025, this Court once again denied counsel's petition, concluding Attorney Bispels had "identified a non-frivolous issue: whether Officer Morgan possessed the requisite reasonable suspicion to conduct a frisk of [Appellant]." *Commonwealth v. Lenhardt*, No. 71 MDA 2025, unpublished memorandum at 7 (Pa. Super. filed Nov. 4, 2025) ("*Lenhardt II*"). Accordingly, we remanded for Attorney Bispels to file an advocate's brief arguing this issue. *Id.* at 8. We again retained panel jurisdiction.

_____

[5] *See Anders v. California*, 386 U.S. 738 (1967).

On November 18, 2025, a different attorney from the Berks County Office of the Public Defender, Deborah L. B. Brown, Esquire, entered her appearance on Appellant's behalf. Attorney Brown thereafter filed an application for oral argument, which was granted by order entered January 23, 2026. Counsel filed an advocate's brief on March 23, 2026. Appellant's case was reassigned to the instant panel, and oral argument was heard on May 5, 2026. Appellant's following issue is now ripe for our review: "Whether the trial court erred in denying [Appellant's] motion to suppress the firearm and derivative evidence obtained through an unlawful *Terry* frisk." Appellant's Brief at 5 (footnote and unnecessary emphasis omitted).

To begin, we recognize:

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the defendant prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 333 A.3d 470, 476 (Pa. Super. 2025) (quoting *Commonwealth v. Tillery*, 249 A.3d 278, 280 (Pa. Super. 2021) (citation and brackets omitted)).

Additionally:

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." **Commonwealth v. Luczki**, 212 A.3d 530, 542 (Pa. Super. 2019) (citation omitted). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." **Id.** (citation omitted).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

**Commonwealth v. Brinson**, 328 A.3d 1096, 1104 (Pa. Super. 2024) (citation omitted).

"[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous." **Int. of T.W.**, … 261 A.3d 409, 417 ([Pa.] 2021) (quoting **Arizona v. Johnson**, 555 U.S. 323, 326-27 … (2009)). "A **Terry** frisk is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot and that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." **Commonwealth v. Davis**, 102 A.3d 996, 999 (Pa. Super. 2014) (citation and quotation marks omitted). "To validate a **Terry** frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." **Commonwealth v. Cunningham**, 287 A.3d 1, 10 (Pa. Super. 2022) (citation omitted). "In determining whether a **Terry** frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances." **Id.**

*Miller*, 333 A.3d at 477-78.

Here, Appellant does not dispute the first prong of the *Terry* test, *i.e.*, that his investigative detention was supported by reasonable suspicion. In any event, this Court has already concluded

> Officer Morgan possessed the requisite reasonable suspicion to stop [Appellant] and question him regarding the motorcycle, due to its welded-together nature, and VIN that did not appear to be assigned to any vehicle, let alone the motorcycle. Such evidence supports a reasonable suspicion that the motorcycle may have been stolen or may have been a vehicle not permitted on the roadways of the Commonwealth.

*Lenhardt II*, No. 71 MDA 2025, unpublished memorandum at 7.[6] Thus, Appellant's investigative detention was lawful, and the first prong of *Terry* was met.

Next, we must discern whether Officer Morgan had reasonable suspicion Appellant was armed and dangerous, in order to satisfy the second prong of *Terry*. *See Miller*, *supra*. In the trial court's opinion accompanying its order denying Appellant's motion to suppress, the court explained why the *Terry* frisk of Appellant was lawful, stating:

> The interaction with Officer Morgan was an investigative detention[, and] … he had reasonable suspicion that criminal activity was afoot based on the dispatch, his observation of the condition of the motorcycle[,] and that it did not have a matching

---

[6] Even if we did not agree with this determination, which we do, we would be bound by it. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (explaining the "related but distinct rules which make up the law of the case doctrine[,]" including that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court").

VIN number, coupled [with] his knowledge of the prior reports of parking violations and suspected drug activity at that location. The totality of the circumstances gave the officer reasonable suspicion to justify a pat down search of [Appellant]. ***See Terry***…, 392 U.S. [at] 30 ([stating the] accepted standard for a pat down [is] when [a] police officer observes unusual conduct which leads to [a] reasonable conclusion[,] in light of his experience[,] that criminal activity may be afoot[])[.]

Findings of Fact and Conclusions of Law, 5/22/24, at 2-3.

On appeal, Appellant first argues "the court's conclusion is flawed[,] as it … appl[ied] the framework of the first prong of the ***Terry*** test, which determines whether an investigative detention was lawful, to the second prong of the ***Terry*** test, which determines whether an ensuing frisk was lawful." Appellant's Brief at 18 (citing ***Terry***, 392 U.S. at 30). We agree. It appears the court conflated the two prongs of the ***Terry*** test, concluding Appellant's frisk was lawful simply because the officer had reasonable suspicion to conduct the investigative detention. Because the trial court did not separately assess whether Officer Morgan had reasonable suspicion that Appellant was armed and dangerous, the court erred.

Notwithstanding, Appellant is not entitled to relief.[7] Appellant argues the ***Terry*** frisk was unlawful because Officer Morgan did not reasonably believe he was armed and dangerous before conducting the frisk. Appellant contends the officer did not see whether he came out of the drug house at 531 East 2nd Street and, even if he did, the criminal activity reportedly

---

[7] This Court is permitted to affirm the trial court "on any valid basis, as long as the court came to the correct result…." ***Wilson v. Transport Ins. Co.***, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (citations omitted).

occurring at that house did not include violent crimes involving weapons. Appellant also stresses Officer Morgan's testimony that Appellant did not run, he was cooperative and answered the officer's questions, he did not appear intoxicated, and he did not threaten the officer in any way. *See* N.T. Hearing at 26.

In response, the Commonwealth maintains the frisk was legal. It argues:

> The[] facts about the appearance of the motorcycle, the missing VIN and registration, and [Appellant's] story properly support[ed] reasonable suspicion to conduct the investigative detention. Furthermore, Officer Morgan's familiarity with the illicit nature of the activity that occurs in the area where the motorcycle was parked, coupled with [Appellant's] pre-frisk admission to being armed, support[ed Officer] Morgan's reasonable suspicion that [Appellant] was armed and dangerous. While the admission to being armed came after [Officer] Morgan had informed [Appellant] that he was going to frisk him, it did occur before the [f]risk and added to the totality of the circumstances. Even without it, Officer Morgan's reasonable suspicion was still present based upon the other factors described previously. Based on this record, the trial court properly found that Officer Morgan possessed the requisite reasonable suspicion to conduct a *Terry* frisk [of Appellant].

Commonwealth's Brief at 12.

Appellant counters that "[i]t was only after [Officer] Morgan began the *Terry* frisk by detaining [Appellant] and preparing to physically pat him down that [Officer] Morgan asked [Appellant] if he had any weapons." Appellant's Brief at 23 (citing N.T. Hearing at 28). He concludes, therefore, that "but for [Officer] Morgan['s] beginning the unlawful *Terry* frisk, [Appellant] would have never told [the officer] … he had a weapon." *Id.* Thus, Appellant

maintains his "reference to having a weapon should be suppressed as 'fruit of the poisonous tree,' which requires any 'evidence obtained from, or acquired as a consequence of, lawless official acts' to be excluded." *Id.* (quoting *Commonwealth v. Lukach*, 163 A.3d 1003, 1013 (Pa. Super. 2017) (citation omitted)).

The dispositive question is whether the frisk had begun when Appellant admitted he had a firearm. Notably, Officer Morgan testified on cross-examination as follows:

> [Defense Counsel:] At this point then, I believe you inform[ed Appellant] that you [would] be patting him down?
>
> [Officer Morgan:] No. At this point in my mind, I made the decision to pat him down for weapons because people that come and go into that parking area have been known to go into the drug house. It was known information for people parking there [and] coming and going. I raised my hands up like this as I was about to pat him down, and I said, ["D]o you have any weapons on you?["]
>
> So yes, I made the decision to pat him down. But I was not actively patting him down. I was about to or [was] commencing the process. I put my arms like this, and I said, ["D]o you have any weapons on you?["] He indicated about the gun in his waistband, at which point in time I retrieved the firearm from his waistband.
>
> [Defense Counsel:] … I'm going to read you a line in your report, and let me know if this is correct. … [Y]ou write[,] "[W]hile initiating contact with [Appellant], I inquired if he had weapons on him as I was starting a pat-down for weapons."
>
> [Officer Morgan:] That is correct. Now, the starting, for clarification there, for the starting, it was commencing but had not started. It was at the starting point. I said, ["D]o you have any weapons on you?["] And I raised my hands up like this because I was going to pat him down, absolutely, 100%.

> I was starting, but … my hands hadn't touched him. I put them up like this. [Then I asked, "D]o you have any weapons on you?[" To which Appellant replied, "]Yes, I have this gun here in my waistband.["]

N.T. Hearing at 28-29.

Based on Officer Morgan's testimony, we conclude the **Terry** frisk had not yet begun when Appellant informed the officer he had a gun. Our decision in **Commonwealth v. Clemens**, 66 A.3d 373 (Pa. Super. 2013), is instructive. There, a police officer had reasonable suspicion to detain Clemens to investigate him for drug-related activity. **Id.** at 380-81. After a brief conversation with Clemens, the officer "asked [him] to stand up and turn around … so that he could pat [Clemens] down for officer safety…." **Id.** at 376 (some brackets omitted). "In response to [the o]fficer['s] … demand, [Clemens] stood up and turned around for the frisk." **Id.** at 377 (citations omitted). As soon as Clemens stood up and spread his legs, a bag of suspected narcotics fell to the ground "from his leg area…." **Id.** Clemens was arrested and searched incident to arrest, revealing more evidence indicative of drug sales, all of which culminated in his conviction for several drug-related offenses. **Id.**

On appeal, Clemens argued, *inter alia*, "that [the o]fficer … did not have sufficient reason to believe that he was armed and dangerous[,]" and, "[t]hus, … the frisk was unconstitutional." **Id.** at 381. We disagreed, concluding the officer "did **not** subject [Clemens] to a frisk" and, thus, Clemens' "claim automatically fails." **Id.** (emphasis added). Notably, we rejected Clemens' insistence "the frisk commenced at the moment [the o]fficer … ordered [him]

- 11 -

to stand up and turn around to prepare for the frisk…." ***Id.*** at 382. We reasoned:

> [B]y its very definition, the term "frisk" requires tactile contact. ***See*** BLACK'S LAW DICTIONARY 692 (8th ed.2004) (defining a "frisk" as "[a] **pat-down search** to discover a concealed weapon. —Also termed *pat-down.*") (emphasis added) (italics in original); MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 502 (11th ed. 2003) (defining the noun "frisk" as "an act of frisking" and the transitive verb "frisk" as "to search (a person) for something (as a concealed weapon) by running the hand rapidly over the clothing and through the pockets"); ***see also Terry***, 392 U.S. at 24–25 … (defining a frisk as an officer's "carefully limited search of the outer clothing of [an individual] in an attempt to discover weapons which might be used to assault [the officer]"; further reasoning that an officer's justification for a "***Terry*** frisk" must be greater than—or, at least, in addition to—that required for a "***Terry*** stop" because a frisk is more intrusive than a detention).

***Id.*** at 382.

Because the ***Clemens*** panel concluded a frisk requires physical touch, it found the officer's "direction to Clemens was simply a continuation of the lawful seizure and was consistent with our Supreme Court's precedent." ***Id.***; ***see also Commonwealth v. Revere***, 888 A.2d 694, 707 (Pa. 2005) (holding "the need for safety or security in conducting and completing an investigative detention" enables an officer to move an individual "short distance[s]" during a detention). Ultimately, the ***Clemens*** panel held that the officer's "verbal order for [Clemens] to 'stand up and turn around' did not constitute a 'frisk,'" and once the drugs were dropped from his person, the officer possessed probable cause to lawfully arrest and search Clemens without a warrant. ***Clemens***, 66 A.3d at 382.

Here, the facts are even less indicative of a frisk being underway than in ***Clemens***. Not only did Officer Morgan not touch Appellant at all, but he also did not give Appellant any verbal orders related to a frisk. Instead, the officer merely raised ***his own*** hands, presumably to demonstrate what he was about to direct Appellant to do. Before giving any directive, however — and before making any physical contact with Appellant — Officer Morgan asked him if he had any weapons. Appellant admitted he had a gun in his waistband, after which the officer commenced his frisk of Appellant to remove it.

Thus, when the frisk began, Officer Morgan knew Appellant was armed. He also suspected Appellant had stolen a motorcycle. Appellant had parked the motorcycle in a spot frequently parked in by people going in and out of the residence at 531 East 2nd Street. Recent reports indicated that house was being used for drug and sex crimes. Given the totality of these circumstances, Officer Morgan had reasonable suspicion Appellant was armed and dangerous. Thus, the officer's frisk of Appellant to remove the gun was lawful.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/16/2026