J-A17040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE ANDERSON | : | |
| | : | |
| Appellant | : | No. 1062 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 28, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0001662-2020

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 5, 2023**

Appellant, George Anderson, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial conviction for firearms not to be carried without a license.[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> [The testimony adduced at the suppression hearing in this matter is as follows.]  On May 7, 2020, at approximately 10:54 p.m., Officer Jeffrey Walls of the Chester City Police Department was on routine patrol, in uniform and in a marked vehicle, in the area of the 200 Block of East 14th Street.  Officer Walls was at a red light when he observed a silver Jeep traveling south in the 1400 block of Edgemont Avenue, with a green light, when the vehicle abruptly came to a stop upon observing the officer, and then made a left hand turn without a turn signal.  Officer [Walls] observed the vehicle had a cracked windshield, and he could see that

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6106(a).

the inspection sticker was expired. Officer [Walls] then got behind the vehicle, and was unable to read the license plate due to a hazy plastic cover over top of it, and dim license plate lights, which is a violation of the Motor Vehicle Code.

Officer [Walls] performed a traffic stop, which was located in a high crime area, based on numerous shootings, robberies, drug sales, gang activity and homicides in the area. Upon pulling the vehicle over, [O]fficer [Walls] read the registration and determined it was expired. While Officer [Walls] was still seated in his patrol vehicle, he observed furtive movements towards the center console within the vehicle, and dropped his head down toward the center console.

Officer [Walls] approached the vehicle, and [Appellant] (driver) provided his information, which revealed his license was suspended (DUI related) and he was not the owner of the vehicle. Officer [Walls] smelled the odor of marijuana inside the vehicle and asked [Appellant] if he had anything illegal inside the vehicle, to which he responded, while opening the center console, I don't have anything in here except hand sanitizer. Officer [Walls] found this strange and asked again if he had anything illegal, at which point [Appellant] became extremely nervous and reaching around his person and his sides[.] Officer Walls asked [Appellant] to exit the vehicle and he performed a pat down search for weapons and was placed toward the rear of the vehicle.

Officer Litivenko arrived on location, and at that time, Officer Walls was performing a protective sweep of the areas of the vehicle within reach of [Appellant]. The rear of the center console was dislodged, and [O]fficer [Walls] could see the handle of a firearm. [Appellant] was placed into custody.

The vehicle was to be towed, in accordance with Department policy and procedures, which were followed, and an inventory search was performed. Officer Litivenko observed marijuana on the passenger side of the vehicle in plain sight upon opening the door.

[Appellant] was taken back to police headquarters where

Officer Walls read him ***Miranda***[2] and asked if he would be willing to give a written statement that it was his firearm. [Appellant] replied that he was the only person in the car, so it has to be his, but he would not give a written statement. There is nothing in the record that indicates the statement was the result of coercion or other unlawful means. [Appellant] knowingly and voluntarily made the statement to police.

(Trial Court Opinion, filed 11/8/22, at 2-3) (internal citations omitted).

Procedurally, the Commonwealth charged Appellant with possession of a firearm prohibited, possession of a firearm with an altered manufacturer number, firearms not to be carried without a license, possession of a controlled substance, possession of marijuana, possession of drug paraphernalia, and several violations of the motor vehicle code.

On November 12, 2021, Appellant filed a motion to suppress. The trial court conducted a hearing on the motion on February 24, 2022. On April 1, 2022, the court denied the motion to suppress,[3] and the case proceeded to trial. At the close of the evidence, but prior to charging the jury, the trial court held a charging conference with counsel. Neither Appellant nor the Commonwealth raised any objections to the proposed charges.

During deliberations, the jury raised two questions. After responding to the first question, which concerned whether all jurors had to agree for a

---

[2] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3] The trial court "found the testimony of Officer Jeffrey Walls to be [a] credible account of the events that took place on May 7, 2020." (***Id.*** at 2).

unanimous verdict, the court explained the following concerning the jury's second question:

> THE COURT: For the second question, which is a little bit— we had to re-write it. It seems to be the question is for the first element of carrying a firearm without a license, the question is (a) if the firearm is anywhere in the car, does it qualify as carrying a firearm about one's person; (b) are all the elements of possession relevant for determining whether someone was carrying a firearm; and (c) define carrying.

(N.T. Trial, 12/7/22, at 171-72).

The court stated that after discussing the issue with counsel, it appeared that there was an error in the court's initial instruction for the elements of firearms not to be carried without a license. Specifically, the instruction originally given to the jury stated "first, that the defendant carried a firearm concealed or about his person." (**Id.** at 172). Upon realizing its error, the trial court instructed the jury with the correct language, "first that the defendant carried a firearm concealed inside a vehicle." (**Id.**) Appellant did not object to the trial court's correction.

The jury then asked an additional question concerning the definitions of possession and carrying with respect to the charges of carrying a firearm without a license and possession of a firearm with an altered serial number. (**See id.** at 176-78). The trial court stated: "Possession of a Firearm with an Altered Serial Number. That's what Possession refers to that charge specifically. Carrying a Firearm Without a License is—in here, it's not the same definition of the first charge. Do you understand?" (**Id.** at 178). The jurors

stated that they understood, and defense counsel made no objection. Later, at side bar, defense counsel told the court that everybody was confused and asked the court to re-read the charge for possession of a firearm with an altered manufacturer number. (*Id.* at 179, 181-82). After re-reading the charge, and confirming the jury understood, the court excused the jury to continue its deliberation. Defense counsel made no objection to the court's subsequent instruction.

Ultimately, the jury found Appellant guilty of firearms not to be carried without a license, and not guilty of possession of a firearm with an altered manufacturer number. After the second portion of the bifurcated trial, where the Commonwealth introduced evidence of Appellant's prior conviction, the jury found Appellant not guilty of persons not to possess a firearm.[4] On February 28, 2022, the court sentenced Appellant to 42 to 84 months of incarceration. Appellant did not file a post-sentence motion. On March 30, 2022, Appellant filed a timely notice of appeal. The trial court subsequently ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises the following issues on appeal:

> 1. Did the trial court err by denying [A]ppellant's motion to suppress physical evidence and statements where Appellant had a reasonable expectation of privacy in the areas of the vehicle searched?

---

[4] The Commonwealth withdrew all remaining charges prior to trial.

- 5 -

2. Did the trial court err by denying [A]ppellant's motion to suppress physical evidence and statements where the officer prolonged the traffic stop beyond its original mission absent reasonable suspicion of criminal activity such that the searches of the vehicle were unlawful and there was no other lawful basis for a warrantless search, in violation of the United States and Pennsylvania Constitutions?

3. Did the trial court impose an illegal sentence for carrying a firearm without a license where the court had no authority to sentence on this charge when the finding of guilt was made in the absence of any instruction on the requisite element of possession of a firearm?

(Appellant's Brief at 4) (reordered for purposes of disposition; unnecessary capitalization omitted).

Our standard of review of a trial court's denial of a motion to suppress evidence is well settled. "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27.

Our scope of review is limited to the evidentiary record of the pre-trial

hearing on the suppression motion. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017).

In his first issue, Appellant claims that the trial court erred in finding that he had no reasonable expectation of privacy in the vehicle searched.[5] Appellant argues that the Commonwealth's sole reliance on the fact that he did not own the vehicle was insufficient to establish the lack of a privacy interest. Appellant suggests that the "the mere fact that a person is operating a motor vehicle is sufficient to sustain a finding of reasonable expectation of privacy in the vehicle where there is no other evidence suggesting that a defendant had no reasonable expectation of privacy in a vehicle." (Appellant's Brief at 40). Further, Appellant insists that evidence showed he was previously issued a traffic citation while driving the vehicle, and that he was

---

[5] As previously mentioned, we have reordered Appellant's issues to consider this question first, because a reasonable expectation of privacy is a predicate required to challenge a search. *See Commonwealth v. Maldonado*, 14 A.3d 907, 910 (Pa.Super. 2011).

previously involved in an accident in the vehicle, which demonstrates he had a reasonable expectation of privacy in the vehicle. Appellant concludes the court's finding that he lacked a reasonable expectation of privacy in the vehicle was erroneous, and this Court must grant relief. We disagree.[6]

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures." *Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa.Super. 2014), *appeal denied*, 630 Pa. 734, 106 A.3d 724 (2014). Article I, Section 8 can provide no less protection than what the Fourth Amendment requires. *Commonwealth v. McCree*, 592 Pa. 238, 246, 924 A.2d 621, 626 (2007). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Maldonado, supra* at 910.

> [G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. "However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched."
>
> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional

---

[6] Although Appellant also emphasizes his standing to challenge the search in question, the law in Pennsylvania remains clear that "[a] defendant with standing must still establish a reasonable expectation of privacy in the area searched." *Maldonado, supra* at 911 n.3.

- 8 -

legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

**Commonwealth v. Jones**, 874 A.2d 108, 118 (Pa.Super. 2005) (internal citations omitted).

**Commonwealth v. Burton**, 973 A.2d 428, 435 (Pa.Super. 2009) (*en banc*).

In determining whether a person's expectation of privacy is legitimate or reasonable, we must consider the totality of the circumstances and the determination ultimately rests upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

**Commonwealth v. Kane**, 210 A.3d 324, 330 (Pa.Super. 2019), *appeal denied*, 655 Pa. 496, 218 A.3d 856 (2019), *cert. denied*, ___ U.S. ___, 140 S.Ct. 2650, 206 L.Ed.2d 718 (2020) (internal citations and quotation marks omitted).

In **Maldonado, supra**, police pulled over the appellee's vehicle while the appellee was driving his paramour's car. At the suppression hearing, the Commonwealth presented evidence that the appellee's paramour owned the vehicle in question and that the appellee lived with her at the address where the vehicle was registered. The appellee offered no evidence that he had permission to drive the car on the day in question. The trial court ultimately granted the appellee's suppression motion. On appeal, this Court reversed and remanded. In addressing the question of the appellee's reasonable

expectation of privacy, this Court stated that the fact that the appellee and his paramour "might have lived together…does not foreclose the possibility that [the appellee] was driving [the paramour's] vehicle without her knowledge or permission." **Maldonado, supra** at 911. Therefore, because the appellee did not demonstrate that he had the authority to operate the vehicle, this Court concluded that the suppression court erred in granting the suppression motion. **See id.**

In **Commonwealth v. Brown**, 64 A.3d 1101 (Pa.Super. 2013), *appeal denied*, 622 Pa. 747, 79 A.3d 1096 (2013), this Court again considered whether a defendant established that he had a reasonable expectation of privacy in an automobile that he did not own. There, the defendant offered no evidence of any relationship to the owner, nor did he offer any testimony that he had the authority to operate the automobile on the night in question. Thus, this Court agreed with the suppression court that the defendant "failed to establish a legally cognizable expectation of privacy in the vehicle necessary for him to prevail" on his challenge to the search of the automobile. **Id.** at 1107.

Instantly, police pulled Appellant over while he was driving a car that was not registered to him. Although the record demonstrated that the car was registered to Appellant's aunt, and that Appellant had driven the car in the past, Appellant presented no evidence that he had permission to drive the car on the day of his arrest. Under these circumstances, Appellant did not

demonstrate that he had the authority to operate the vehicle. Thus, we conclude that Appellant failed to establish a reasonable expectation of privacy in the vehicle he was driving.[7] **See Brown, supra**; **Maldonado, supra**.

Appellant's third question on appeal raises two distinct issues, which we will address separately. First, Appellant claims that his sentence for firearms not to be carried without a license is illegal based on the trial court's alleged error in instructing the jury on this charge. Appellant argues that the trial court erred in responding to the jury's question during deliberations by stating that the definition of "possession" associated with possession of a firearm with an altered serial number did not apply to the definition of firearms not to be carried without a license, and that firearms not to be carried without a license was not a possessory offense. (Appellant's Brief at 49-50). Appellant maintains that because the court's jury instruction was flawed, the statutory preconditions to the court's sentencing authority were not fulfilled and the sentence imposed was illegal. We disagree.

Our Supreme Court has identified four broad categories of challenges

---

[7] Based on our determination that Appellant did not have a reasonable expectation of privacy in the vehicle, we need not address his contention in his second issue concerning whether officers had the requisite reasonable suspicion to conduct the vehicle search. Although the trial court denied the motion to suppress based on its conclusion that the officers had the requisite reasonable suspicion to search, "if the record supports the result reached by the suppression court, we may affirm on any ground." **Commonwealth v. Cartagena**, 63 A.3d 294, 301 (Pa.Super. 2013) (*en banc*).

that fall within the definition of illegal sentencing challenges.[8]   Appellant

alleges that his challenge falls within the second category.

> The second category encompasses allegations that a sentence was imposed without the fulfillment of statutory preconditions to the court's sentencing authority.  …  [A] successful challenge means that the court issued a sentence that it lacked the statutory authority to impose.  In other words, if the sentencing statute at issue conditions the court's authority to impose a sanction upon the existence of attendant circumstances, and if those circumstances were not present, then the court lacked statutory authority to impose the sentence, even though the unfulfilled conditions may not raise an issue of constitutional dimension.  …

***Id.*** at \_\_\_, 277 A.3d at 562 (internal citations omitted).

Here, the jury convicted Appellant of firearms not to be carried without

a license, and the court sentenced him on that count.  Appellant's concern

with the specific instructions given is not a challenge to the court's statutory

authority to impose a sentence.  Rather, it is a challenge to the trial court's

jury instructions.  Appellant cites no law to support his proposition that a

court's allegedly incorrect jury instruction can give way to an illegal sentencing

challenge on these grounds.  (***See*** Appellant's Brief at 47-49).

---

[8] ***See Commonwealth v. Prinkey***, \_\_\_ Pa. \_\_\_, \_\_\_, 277 A.3d 554, 562-63 (2022) (explaining that illegal sentencing challenges must fall within four categories: "a claim that a sentence was imposed pursuant to a facially unconstitutional sentencing statute"; "allegations that a sentence was imposed without the fulfillment of statutory preconditions to the court's sentencing authority"; "claims that allege a violation of a substantive restriction that the Constitution places upon a court's power to apply the statutory sentence to the defendant"; and claims that "a sentence is illegal [because] the statutory support for the underlying conviction is void *ab initio*").

We turn next to Appellant's alternative claim, that he is entitled to a new trial because the trial court erred in answering the jury's question regarding the definition of possession as applied to firearms not to be carried without a license. Preliminarily, we must discern whether Appellant properly preserved this issue for appeal.

Our Supreme Court has held that "the plain language of [Pa.R.Crim.P.] 647(B) requires a specific objection to assign error to a controverted aspect of or omission from a jury charge." *Commonwealth v. Pressley*, 584 Pa. 624, 629–30, 887 A.2d 220, 223 (2005).

> The pertinent rules, therefore, **require a specific objection** to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

*Id.* at 630-31, 887 A.2d at 223 (footnotes omitted; emphasis added). *See also* Pa.R.Crim.P. 647(c) (explaining that no portions of jury charge nor omissions from charge may be assigned error, unless specific objections are made thereto before jury retires to deliberate); *Commonwealth v. Melton*, No. 849 EDA 2018 (Pa.Super. filed Apr. 27, 2020) (unpublished memorandum), *appeal denied*, 662 Pa. 489, 240 A.3d 109 (2020) (holding appellant waived challenge to court's failure to give requested *corpus delicti*

instruction; although appellant submitted proposed point for charge regarding *corpus delicti* instruction and initially objected to jury instructions, appellant failed to object to court's supplemental instructions which had inadvertently omitted requested instruction; appellant's failure to object to supplemental instruction deprived court of opportunity to correct its error at appropriate stage of proceedings and to alleviate appellate issues).[9]

Here, the relevant exchange is as follows:

> JUROR: Sorry, Your Honor. So I just want to reiterate if I understood correctly. All three elements of possession have to be met in order for the carrying a concealed weapon on a person to be met?
>
> THE COURT: Right.
>
> JUROR: Did I hear that correctly?
>
> THE COURT: This is not carrying a firearm on a person. This case involves a firearm in a car.
>
> JUROR: Or on a—on or about—
>
> THE COURT: Right.
>
> JUROR: —in a vehicle?
>
> THE COURT: First, that the defendant carried a firearm concealed in a vehicle. Has to be met. And then the other two elements also have to be met in order to convict the defendant of carrying a firearm without a license.
>
> THE JUROR: I guess my question was we were wondering if possession, the definition of possession, applied to—had to be met for the carrying—yeah.

---

[9] ***See*** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

[DISTRICT ATTORNEY]: That's the third question, Your Honor.

THE COURT: The—you mean carrying? Yeah, the third—

[DISTRICT ATTORNEY]: The one that says—it was the last question. Wasn't there one—

THE COURT: Well, there [were] two questions.

[DISTRICT ATTORNEY]: I thought there was one more about the possession elements.

UNKNOWN FEMALE: Define carrying. I think they're getting confused about the definition of carrying versus possession. Are they the same thing.

THE COURT: Okay. Possession only refers to the first charge, which is—what was the first charge?

[DISTRICT ATTORNEY]: Possession of a firearm with an altered serial number.

THE COURT: Possession of a firearm with an altered serial number. That's what possession refers to that charge specifically. Carrying a firearm without a license is—in here, it's not the same definition of the first charge. Do you understand?

JUROR: Yep.

JUROR: Yes.

THE COURT: Okay? I'm going to send you back. Does that answer your questions?

JUROR: Yes.

JUROR: Yes, Your Honor.

THE COURT: Okay. Does counsel have any other additions or thoughts? Okay?

[DISTRICT ATTORNEY]: I don't.

THE COURT: All right.

[DEFENSE COUNSEL]: Judge –

THE COURT: I'm going to—this is the re-worded carrying a firearm without a license. I believe it answers all your questions.

JUROR: Yes.

THE COURT: Okay? So we're going to send you back and then—with copies of [these] elements. The other one—the other ones you have are the same. Okay? All right.

[DEFENSE COUNSEL]: Judge, can we approach?

\*    \*    \*

[DEFENSE COUNSEL]: —everybody's here and they're very confused, I am — I'm going to ask you to read the whole charge again, 6110.2, possession of a firearm with an altered manufacturer's number, just for the good of the jury.

\*    \*    \*

THE COURT: Okay? I'm going to re-read it, so.

(N.T. Trial at 176-181) (unnecessary capitalization omitted). The trial court then re-read the jury instruction for possession of a firearm with an altered manufacturer's number, and Appellant did not object to this instruction, or ask the court to supply any other supplemental instructions.

Upon review, we conclude that Appellant did not preserve his objection to the court's jury instructions. We disagree with Appellant's claim that because defense counsel asserted that "everybody was very confused" he

- 16 -

sufficiently preserved the issue.[10] Significantly, after defense counsel made that statement, and requested re-reading of the instruction for possession of a firearm with an altered number, the trial court re-read the full instruction as counsel requested, and counsel lodged no further objections.[11] Notably, Appellant also did not ask the court to re-read the instruction for firearms not to be carried without a license. On this record, Appellant waived any challenge to the jury instructions. **See** Pa.R.Crim.P. 647(B); **Pressley, supra**; **Melton, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2023

---

[10] We note that defense counsel's statement that everybody was confused related to the charge for possession of a firearm with an altered manufacturer's number, and not for the charge of firearms not to be carried without a license, which is at issue here.

[11] Although Appellant suggests that defense counsel also made an "off-the-record" objection, Appellant offers no proof that such objection was made.